## Noakes *v.* Lattavo (et al., Appellants).

Argued March 27, 1944. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*George Y. Meyer,* for appellants.

*A. M. Oliver,* of *Dipple & Oliver,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, May 22, 1944:

The tribunal to decide this case was the jury and its verdict, save for the reduction hereinafter made, must be upheld, for in no other respect do we find in the record any error which would justify this court in sustaining defendants' appeals.

Plaintiff was employed by the Union Railroad Company as a brakeman. In the early evening of November 15, 1940, he was working on a train which was being operated within the plant of the Irwin Works of the Carnegie-Illinois Steel Corporation. Across the mill property ran a 20 foot wide macadam road intersected at right angles by six railroad sidings spaced at various intervals. Plaintiff's train, consisting of a locomotive, caboose and four gondola cars, moved across this road, came to a stop at a point about fifty feet distant, and there awaited the throwing of a switch to enable it to back onto another siding. Plaintiff dropped off when the train passed the road, his duty being to flag the crossing and, as the train came back, to board the rear car and then ride the head of the train in the direction of its motion. He stood on the crossing swinging his lighted lantern, and, as he did so, saw defendants' truck,[1] a tractor with a flat-top trailer attached, coming

---

[1] The truck was owned by defendant O. M. Lattavo, but had been leased, together with its driver, Hoffman, to Lake Shore Motor Freight Company and was being operated by and on behalf of the latter. At the trial, therefore, a non-suit was properly entered as to Lattavo. The verdicts rendered were against defendants Hoffman and Lake Shore Motor Freight Company.

up the road from one of the mill gates 460 feet away; he kept watching it as it approached across the intermediate tracks. The switch having been thrown, the locomotive started to move backward at a speed of three or four miles an hour, shoving the gondola cars ahead of it toward the crossing; as the nearest car came within a few feet of the road plaintiff boarded it on the side opposite the oncoming truck, which at that time was 200 to 230 feet away. When the train reached the road the truck was still distant 150 feet; it was then running about 40 miles an hour, but when within 60 to 80 feet of the crossing the driver, after trying to stop or at least slow down, suddenly increased the speed of the truck in an apparent attempt to beat the train and cross ahead of it. The result was a collision between the rear gondola and the side of the trailer. Plaintiff, who had continued until the very happening of the accident to wave his lantern from his position on the car, was hurled completely across the trailer and suffered severe injuries. The yard was well lighted, and although a light snowfall had started the visibility was good, so that there was no excuse for the failure of the driver to see the train and to appreciate the risk of attempting to cross in front of it. Of course, all the facts thus stated represent the situation as pictured by *plaintiff* and, in general, by his witnesses. The jury rendered a verdict in his favor in the sum of $25,000.

Defendants make no attempt to absolve the operator of the truck from negligence, but contend that plaintiff should be declared guilty of contributory negligence as a matter of law. They say that he should have remained on the crossing and have continued to flag the truck instead of boarding the train; had he done this, however, he would not have been performing his duty; moreover, as the truck was still some 200 feet away at that time, he had every reason to believe that it would come to a stop before traversing that distance or would turn off laterally onto ground which at that place was traversa-

ble by other vehicles. They say that if he did board the train he should have done so on the side toward, instead of away from, the truck, so that his lantern would remain more clearly visible to the driver, but it appears that it was necessary for the brakeman to take his position on the side from which the engineer operated the train, which in this case was the left of the locomotive in the direction in which the train was then moving. Finally they say that he should have signalled the engineer to stop the train and have jumped when he saw the truck continuing its course, but he is not to be held accountable for failure to adopt the wiser course—if such it were—where the emergency situation which finally developed was due, not to his own negligence, but to that of the operator of the truck: *West v. Morgan,* 345 Pa. 61, 63, 27 A. 2d 46, 47. In short, we find nothing in plaintiff's conduct which—at least as a matter of law—convicts him of contributory negligence.

The verdict was not, in our opinion, against the weight of the evidence nor is there any justification for defendants' complaint that the court unduly stressed plaintiff's evidence to the disadvantage of defendants' case.[2] Neither is there any merit in the contention that

---

[2] On the contrary, the trial judge, writing the opinion of the court below refusing a new trial, states that he "sensed the reaction of the jury which was trying the case, and from such reaction he believed there was going to be a verdict in favor of the plaintiff, . . . and, accordingly, . . . made every effort to keep the case under such control that if there should be a verdict in favor of the plaintiff, that verdict would be reasonable in amount." He also states that he admitted in evidence certain statements offered by defendants which, he intimates, should probably have been excluded, and he remarks in regard to this: "Of course, the defendants do not now complain of this action on the part of the trial court, and we recite this action on the part of the trial judge in support of our statement that we *deliberately erred* in the trial of the case in favor of the defendants so that the verdict of the jury might be within reasonable bounds—as it was." He further declares: "An examination of the charge in this case indicates to us that the charge was most strongly in favor

the testimony that plaintiff was flagging the crossing should have been excluded because there was no specific allegation in the statement of claim that the driver of the truck was negligent in failing to observe such signalling. Plaintiff's position and actions at the crossing were among the circumstances immediately preceding and attending the accident, and evidence in regard thereto was admissible as part of the res gestæ (*Nevin Bus Line, Inc. v. Paul R. Hostetter Co., Inc.*, 305 Pa. 72, 76, 155 A. 872, 873) even though not expressly pleaded, in support of the general charge in the statement that the truck was operated negligently and "without due regard for traffic conditions then and there existing."

Outside of a minor bruise and a laceration the principal injury suffered by plaintiff was a compound, comminuted fracture of both bones of the left forearm. Due to considerable fragmentation, and notwithstanding several extensive operations to correct the condition, proper bony union has not been effected. There was also extensive injury to the soft tissues so that skin grafts were required, and for a long time there was drainage from the wound indicating the presence of a low grade infection. Plaintiff was confined to bed for four or five weeks

---

of the defense. In fact, we intended to charge most strongly in favor of the defense in this case, and we intended to give the defendants the benefit of everything to which we feel they were entitled, *as well as the benefit of some things to which we feel they were not entitled.* This was in line with our policy of trying to let everything in the case which might be of some benefit to the defendants, because we realized or believed that the verdict in the case was going to be in favor of the plaintiff and, as before stated, we wanted to keep that verdict within reasonable bounds."

We cannot refrain from expressing disapproval of an obviously improper method of attempting to prevent the rendering of an excessive verdict. A judge should not *deliberately err* in the trial of a case or intentionally give litigants *the benefit of some things to which they were not entitled.* The law should be administered correctly and not, by design, erroneously; the proper way to cure an excessive verdict, if rendered, is for the court to reduce it on a motion to that effect or to grant a new trial.

and was in the hospital for approximately six months. While not deprived altogether of the use of his left arm he is not able to use it for manual labor and the condition will undoubtedly be permanent. His medical and hospital bills amounted to $1388 and his claimed loss of earnings to the time of the trial somewhat over $7500. When the accident occurred he was 29 years of age. With full appreciation of the pain and suffering he experienced and the extent of his disability, we are nevertheless of opinion that the damages awarded by the jury are somewhat excessive.

The verdict is reduced to $20,000, and, as thus modified, the judgment is affirmed.