## Hutchison *v.* Pennsylvania Railroad Company, Appellant.

Argued March 30, 1954. Before Stern, C. J., Stearne, Jones, Bell, Musmanno and Arnold, JJ.

*Myron E. Rowley,* with him *Ralph E. Smith, James E. Rowley* and *Rowley & Smith,* for defendant, Graham, appellant.

*Samuel W. Pringle,* with him *John David Rhodes, Clyde Holt, Sr., Holt & Holt,* and *Dalzell, Pringle, Bredin & Martin,* for defendant, Pennsylvania Railroad Company, appellant.

*John J. Naughton,* with him *Francis H. Monek, Edward J. McClain, Henslee, Monek & Murray, Oliver,*

*Brandon & Shearer* and *Ledebur, McClain & Ledebur,* for plaintiff, appellee.

OPINION BY MR. JUSTICE ARNOLD, May 24, 1954:

This was an action of trespass brought by the plaintiff, a railroad brakeman, against The Pennsylvania Railroad Company, Joseph P. Graham, Jr., doing business as J. P. Graham Transfer, and the Wyckoff Steel Company, to recover damages for personal injuries sustained by him in an accident which occurred at 2:55 P.M. December 30, 1949, on a private industrial crossing in Ambridge borough. The action against The Pennsylvania Railroad Company was under The Federal Employers' Liability Act, and that against Graham and Wyckoff was based on a common law action for negligence. A verdict was rendered against The Pennsylvania Railroad Company and Graham in the sum of $40,000, and judgment entered thereon. Wyckoff Steel Company received a verdict in its favor. Graham moved for judgment non obstante veredicto and for a new trial, and The Pennsylvania Railroad Company moved for a new trial. The court below overruled these motions, entered judgment on the verdict, and Graham and the Railroad Company appealed to this Court.

In the borough of Ambridge the Railroad Company maintains an industrial switching track which is just south of Oak alley, which alley parallels the track.

Duss Avenue is 151'2" north of the tracks and is parallel with Oak Alley. Oak Alley and Duss Avenue are connected by a private but paved driveway, 20 feet in width, which crosses the railroad tracks, the crossing consisting of 20 foot length timbers between the rails.

On the day in question a train, consisting of a caboose on the leading end, followed by eight cars and

a steam locomotive, was on the track and moving westerly.[1] When 100 to 150 feet from the crossing the plaintiff signaled the engineer to reduce the speed to 3 miles per hour.

At the time of the accident Hutchison, the plaintiff, was on the north side, i.e. the side nearest to Duss Avenue, the conductor was in the middle, and the other brakeman, Poling, was on the south side, of the caboose platform. The conductor was in charge of the train. The plaintiff saw Graham's truck turn into the private driveway from Duss Avenue, and had a full view of the truck as it moved a distance of 151′2″ to the crossing. The other two members of the train crew saw the Graham truck on the private driveway until their view was cut off by a concrete block building about 24 feet from the tracks.

After the plaintiff signaled the conductor to reduce the speed to three miles per hour, the plaintiff descended to the bottom step of the caboose with the thought of going ahead to flag traffic, if necessary. But when the truck was about 15 to 18 feet from the crossing, plaintiff saw that it was practically stopped, and he and the other members of the train crew came to the conclusion that it would stop. Plaintiff then turned to get back up on the platform of the caboose, when he was struck by the truck and pinned between the tractor and the caboose. The driver of the truck admitted that he could have stopped within a distance of less than a foot, but instead he continued at the rate of five miles per hour and ran into the side of the caboose, the left front fender and bumper striking the step of the caboose. The collision occurred in the cen-

---

[1] The directions given are railroad directions, which will be used throughout this opinion. West by railroad direction is north by compass.

ter of the crossing. The train was stopped within a distance of 14 feet. The plaintiff was dragged that distance and suffered severe injuries. The front end of the caboose was undamaged, but the second step of the caboose was broken and a 14 foot score mark on the caboose.

Graham's driver was entirely familiar with the physical situation, having travelled the private driveway and across the tracks two or three times a week over a three year period. He testified that as he moved toward the crossing from Duss Avenue he did not look until he was about 20 feet from the crossing.

In the appeal of Graham it is the contention that Hutchison was guilty of contributory negligence as a matter of law. But, as the court below held, the plaintiff was not bound to anticipate the negligence of Graham's driver in continuing to drive across the tracks when they were occupied by a train clearly visible. Nor was he bound to anticipate that the driver would not stop, as he should have done, before entering upon the railroad tracks: *Noakes v. Lattavo,* 349 Pa. 463, 37 A. 2d 711. This contention of the appellant, Graham, is overruled. Also the driver of Graham's truck testified that he could have stopped within less than a foot, and gave no reason except his own inattention, for not stopping. The plaintiff was led reasonably to believe that the truck would stop.

We next pass to the contentions of Graham that he was entitled to a new trial:

I.   The verdict, in our opinion, was not against the clear weight of the evidence. Nor was it inconsistent. We have already discussed the theory of the case against Graham. The case against The Pennsylvania Railroad Company was under the Federal Employers' Liability Act. The jury's verdict was also against the

Railroad Company, but the appellant, Graham, is in error when he says that the liability of the Railroad Company was based on the actions of the plaintiff. It was predicated on the responsibility of the agents, servants and employes of the Railroad Company. At other places in his brief Graham stresses the admitted lack of audible warning, the absence of stop signs at the railroad crossing, the fact that the cars were being moved without having the air connected, and that the whistle equipment on the caboose was inoperative. Plaintiff cannot be charged with any responsibility in these matters since he had no control of them in connection with the manner of operation. Neither was the plaintiff responsible for the conduct of his immediate superior, the conductor under whose direction he was working and under whose direction the train movement was being made. As we have stated, there was no contributory negligence as a matter of law on the part of Hutchison, and the jury having freed him from such a charge, leaves the negligence of the Railroad Company to be predicated on factors other than Hutchison's actions.

II. Graham also assigns as error the sustaining of objections to his offer of paragraphs 20 (c), (d), (e), (f), (g) and (i) of the complaint. These paragraphs are averments by Hutchison as to the negligence of The Pennsylvania Railroad Company. Whether or not these averments of the complaint were technically admissible in evidence we need not decide, because it clearly appears that counsel for Graham was permitted to read said averments to the jury and to cross-examine the plaintiff thereon. Thus no prejudicial error was committed against him, as he had all the benefits that would have accrued to him had the pleading been admitted into evidence.

III. Appellant further complains that the court erred in failing to charge as to the duty of the Railroad Company in operating a train toward a crossing. Even if it did so err, it is no defense as to the verdict and judgment against Graham.

IV. In our opinion the charge was not inadequate. It took 58 pages in the printed record. There is little more that the court could have said to the jury as to the defense of Graham, who was so clearly guilty of negligence that little could be said in his behalf. The complaints of the inadequacy of the charge as to the Pennsylvania Railroad do not avail Graham anything.

V. The refusal of Graham's points for charge does not disclose prejudicial error as to him.

VI. Graham presented seven requests for special findings by the jury. All of them were refused and this was assigned as error. It is not the *duty* of the court to submit requests for special findings, it is *discretionary*. The court denied him nothing that he could claim as a matter of right: *Duffy v. York Haven Water and Power Co.*, 242 Pa. 146, 152, 88 A. 935. We will reverse only if an abuse of such discretion appears: *Sebastianelli v. Prudential Insurance Company of America*, 337 Pa. 466, 469, 12 A. 2d 113; *Feigenbaum v. Prudential Insurance Company of America*, 144 Pa. Superior Ct. 412, 419, 420, 19 A. 2d 542. On the subject of these special findings the trial court stated: "Error is alleged in the court's refusal to submit to the jury defendant Graham's requests for special findings. One cannot read the requests without being impressed by the fact that all the inquiries emphasize contributory negligence. The requests, if submitted, would have been unfair to the other parties to the action."

Instead of adopting the request for special findings proposed by Graham, the court submitted to the jury

four specific interrogatories which were determinative of the vital issues involved in the case, and capable of being answered yes or no. The answers by the jury were entirely consistent with the verdict rendered. In view of the special findings which the court itself submitted to the jury, no prejudicial error was visited on the appellant Graham, and hence there was no abuse of discretion.

VII. Graham claims that the verdict was excessive. In our opinion the jury's verdict of $40,000 was not excessive. Such a verdict will not be disturbed by this Court unless it is found that the amount is so grossly excessive as to shock our sense of justice and to indicate a clear abuse of discretion on the part of the court below which sustained such a verdict: *Mashinsky v. Philadelphia*, 333 Pa. 97, 105, 106, 3 A. 2d 790. In this regard the court below correctly stated: "At the time of trial, plaintiff was fifty-nine years of age. . . His expenses were $2,706.15. His loss of wages was in excess of $11,000.00. . . Plaintiff's recovery for pain and suffering and present worth of impairment of earning power was therefore, $26,293.85. As to pain, suffering and inconvenience it is not contradicted that plaintiff suffered a fracture of the left fibula, right fibula, ribs, nose, and pelvis. His hip was placed in a sling. Both legs were placed in casts. One cast was changed eleven times and his one leg was in a cast for a period of eleven months. Sutures were taken in his head and leg. It was necessary for him to wear a leg brace for three years. He has a scar adherent in two places. His left leg is shortened. He will probably have future difficulty with his leg and back. His right leg is deformed. The medical testimony in this case was offered by two reputable local physicians. . . . Neither the testimony of plaintiff, nor of the physicians called by him was of a character likely to in-

flame the minds of the jurors. At the present high level of wages, the jury was justified in making a reasonably high award for the present value of impairment of earning power. The present depreciated value of money is a proper basis for the approval of a considerably higher verdict than that which might have been excessive twenty-five or even ten years ago. In view of all the circumstances, we conclude that the verdict does not offend our conscience, nor does it shock our sense of justice."

The Pennsylvania Railroad Company, against which the verdict was also found, concedes in its brief that the verdict was not too large. We agree with the court below that the verdict was not excessive under the circumstances of this case.

This was a protracted trial, lasting for two weeks, and was free of any substantial errors mitigating against the defendant, Graham. Even though "the trial judge fell a few degrees short of perfection in the conduct of his trial," the judgment need not be reversed. "This court has consistently refused to reverse convictions of murder in the first degree, even with the death penalty imposed, for errors in the conduct of the trial or in the admission of evidence or in the judge's charge, when these errors did not deprive the defendant of the fundamentals of a fair trial": *Commonwealth v. Barnak*, 357 Pa. 391, 419, 54 A. 2d 865. *Cf. Commonwealth v. Schroeder*, 302 Pa. 1, 11, 152 A. 835.

The respective judgments are affirmed.