Wilbert *v.* Pittsburgh Consolidation Coal Company, Appellant.

Argued March 13, 1956. Before STERN, C. J., JONES, BELL, MUSMANNO and ARNOLD, JJ.

*Harold R. Schmidt,* with him *John L. Laubach, Jr.* and *Rose, Rose & Houston,* for appellant.

*Earl J. Cavanaugh,* with him *Evans, Ivory & Evans,* for appellee.

OPINION BY MR. JUSTICE JONES, April 16, 1956:

The plaintiff, an employee of the Pennsylvania Railroad Company, was injured while in the course of his

employment by being thrown from the platform of a caboose upon which he was riding. The accident happened as the result of the derailment and overturning of the caboose at a point where the defendant coal company's private road crossed the railroad track upon which the caboose was being backed by a shifting locomotive at the time of the derailment.

A short time after the accident the plaintiff received from the railroad company $12,500 for which he executed a release relieving the railroad from "a liability claimed and denied". Subsequently the plaintiff instituted the instant action against the coal company to recover damages for his injury on the ground that negligence on the part of the coal company in causing the private crossing to become slag-littered was the proximate cause of the derailment and the plaintiff's consequent injury.

As the release was executed and delivered prior to the effective date of the Uniform Contribution Among Tortfeasors Act of July 19, 1951, P. L. 1130, 12 PS §§2082-2089, the common-law rule that a release of one joint tortfeasor is a release of all would have been applicable. See *Thompson v. Fox*, 326 Pa. 209, 212-213, 192 A. 107, and cases there cited. However, in order that a release of one person from liability may bar an action against another for the same injury, the two must have been jointly liable. Accordingly, a release of one who is not legally liable for an injury to another does not operate to release the culpable tort-feasor. In *Koller v. Pennsylvania Railroad Company*, 351 Pa. 60, 63, 40 A. 2d 89, it was there recognized that "before there can be a joint tort, there must be a community of fault which occasioned the accident." See, also, *Union of Russian Societies v. Koss*, 348 Pa. 574, 578, 36 A. 2d 433.

Ordinarily, one who asserts an affirmative defense has the burden of proving it, but, where the defense is a release from liability for the injury in suit, given to one not a party to the record who is alleged by the impleaded defendant to have been jointly liable with him, the release, when introduced in evidence, makes out a prima facie case of joint liability, and thus the burden of showing that the defendant in the action was solely liable shifts to the plaintiff: *Smith v. Roydhouse, Arey & Company,* 244 Pa. 474, 479, 90 A. 919; *Peterson v. Wiggins,* 230 Pa. 631, 634-635, 79 A. 767.

In the instant case, three issues were litigated in the court below, viz., (1) was the railroad guilty of negligence in relation to the plaintiff's injury, (2) was the coal company guilty of negligence and (3) if so, was its negligence the proximate cause of the plaintiff's injury. The case was tried and submitted to the jury with the controlling effect of the above stated legal principles clearly in mind. Not only did the learned trial judge fully and correctly instruct the jury on the applicable law but defendant's counsel submitted direct and pertinent cognate points for instruction which the trial judge affirmed and read to the jury, expressly pronouncing them to be correct statements of the law. The only one of the defendant's points which the trial judge refused was the one for a directed verdict. Nor did defendant's counsel take any exception to the court's charge save for one presently immaterial matter. The jury returned a verdict in favor of the plaintiff for $10,000. The defendant filed motions for judgment n.o.v. and a new trial, both of which the court en banc refused; and the judgment from which the defendant took this appeal was entered on the verdict. The appellant assigns for error the lower court's refusal of the motions for judgment n.o.v. and new trial.

In support of its motion for judgment n.o.v., the appellant contends (1) that the plaintiff's evidence was insufficient to overcome the presumption of joint liability on the part of the railroad company which the release from the plaintiff imputed and which automatically served to bar an action against the coal company and (2) that the plaintiff failed to prove negligence on the part of the defendant which was the proximate cause of the plaintiff's injury.

To rebut the prima facie case of the railroad's joint liability, the plaintiff offered testimony to show that within the two-week period immediately preceding the accident the railroad's section foreman had twice inspected the private crossing and the track which was seldom used and which led to a mine opening of the coal company; that on the first of these occasions the foreman noted that the coal company had placed slag on its private road including that part which crossed the railroad's track; that the foreman ordered his men to clear the crossing which was done; that he informed the coal company's superintendent that slag should not be placed on the road within the railroad's right of way; that it might cause a derailment; that he inspected the crossing again about a week prior to the accident and while he found it still clear, he noted that slag had moved a little way into the right of way; that the slag was similar in color to the rails so that, when near the rails, it was not readily discernible to one on a moving train; that at the time of the accident the locomotive was moving slowly; that after the derailment of the caboose the locomotive and tender came to a stop with the tender clear of the crossing and the locomotive half off it; and that just after the accident the foreman found that the slag had been piled on the track at a level above the rails and that the path of the derailed caboose led from the center of the crossing

through the slag to the rocky ground at the side of the track. No mechanical defects about the caboose were observed prior to the accident, and an inspection of the scene disclosed no material on the crossing other than the slag.

Taking the facts and the reasonable inferences therefrom in the light most favorable to the verdict as we are necessarily required to do at this stage of the proceeding, the jury was warranted in finding that the accident was not due to any negligence on the part of the railroad company. And, to be liable, the railroad would have had to be negligent. Such is the requirement of the Federal Employers Liability Act, 35 Stat. 65, 45 U.S.C.A. §51. In *Ellis v. Union Pacific Railroad Co.*, 329 U.S. 649, 653, the Supreme Court said, "The Act does not make the employer the insurer of the safety of his employees while they are on duty. The basis of his liability is his negligence, not the fact that injuries occur. And that negligence must be 'in whole or in part' the cause of the injury." As observed in *Wilkerson v. McCarthy et al., Trustees*, 336 U.S. 53, 61, "the issue of negligence is one for juries to determine according to their finding of whether an employer's conduct measures up to what a reasonable and prudent person would have done under the same circumstances. And a jury should hold a master 'liable for injuries attributable to conditions under his control when they are not such as a reasonable man ought to maintain in the circumstances,' bearing in mind that 'the standard of care must be commensurate to the dangers of the business.' Tiller v. Atlantic C. L. R. Co., 318 U.S. 54, 67."

On the other hand, the evidence warranted the jury's finding the coal company guilty of negligence in spreading slag on the roadway at the railroad crossing which it had been specifically cautioned not to do

because of the possibility thereby of derailing a moving car on the railroad track. The inference is not an unreasonable one that the wheels of the caboose were forced up and over the rails by the slag. It is equally clear that the negligent condition created by the slag on the crossing was the proximate cause of the plaintiff's injury. No other cause which could account for the derailment was advanced by either side. In *Foley v. The Pittsburgh-Des Moines Company,* 363 Pa. 1, 25, 68 A. 2d 517, we said that "Proofs to a degree of absolute certainty are rarely attainable; it is sufficient if they are such as to satisfy a reasonable mind; the law does not require the elimination of every *possible* cause of the accident other than that on which the plaintiff relies, but only such other causes, if any, *as fairly arise from the evidence*: [citing cases]. The testimony need not exclude everything which the ingenuity of counsel may suggest as having *possibly* caused or contributed to the injury: [citing cases]. All that a plaintiff is required to do is to prove, to the satisfaction of the court and jury, that the act or neglect of the defendant was the proximate cause of the injury; if he does this he can recover, even though the evidence to sustain his burden of proof does not absolutely exclude every possibility other than the one sought to be established: *King v. Equitable Gas Co.,* 307 Pa. 287, 294, 161 A. 65, 66."

The appellant argues that, even if the slag did cause the derailment, the duty of maintaining the crossing rested upon the railroad company. However that may be, the evidence plainly shows that the defendant assumed dominion over the crossing by first improving it substantially about two years before the accident with a surfacing of "red dog" and by placing slag on the private highway including the crossing of the railroad track shortly before the accident. While the de-

fendant may not have had any obligation originally in respect of the crossing, when it undertook to improve it for its own convenience it thereby incurred the duty of exercising the care of a reasonably prudent person which, in turn, required that the defendant not foul the railroad tracks and thus expose persons rightly using it to the risk of bodily harm. In *Hudson v. Grace*, 348 Pa. 175, 177, 34 A. 2d 498, it was said that "the principle which determines the imposition of liability is simple and constant, being based on the proposition that one who, by sub-standard conduct, causes injury to another is legally responsible therefor if the harmful consequences of such conduct could reasonably have been foreseen. When that principle is applied to the present facts, however unusual they may be, there can be no doubt of the liability of the [defendant] to plaintiffs in this action."

So much for the motion for judgment n.o.v. The motion for a new trial is equally without merit.

Three reasons are advanced in support of the motion for a new trial, viz., (1) that the verdict was against the weight of the evidence, (2) that it was excessive and (3) that the trial judge erred in refusing to withdraw a juror and continue the trial because of an improper remark of plaintiff's counsel during his argument to the jury.

As to the first of the assigned reasons for a new trial, the evidence to which we have already referred is sufficient to justify the jury's verdict. The case could not have been taken from the jury. Practically all of the evidence was introduced by way of oral testimony the credibility whereof was necessarily for the jury whose verdict will not be set aside as being against the evidence unless it appears to be arbitrary and capricious. A determination in such regard is, in the first instance, within the province of the trial court

whose decision will not be disturbed unless there is clear error of law or palpable abuse of discretion: *Wilson v. Kallenbach,* 332 Pa. 253, 256, 2 A. 2d 727.

Nor was the verdict so excessive as to shock the conscience of the court. It cannot, therefore, rightfully be set aside or modified: *Hutchison v. Pennsylvania Railroad Company,* 378 Pa. 24, 31, 105 A. 2d 356. While the extraordinary result of the injury (the plaintiff claimed that he was thereby rendered impotent) rested alone on subjective symptoms which the defendant's medical witness flatly contradicted, the extent of the injury and its physical effect on the plaintiff were matters for the jury to ponder.

During the closing address of plaintiff's counsel, he argued to the jury that they could infer the defendant's liability from the fact that the court had overruled its motion for an involuntary nonsuit. The argument was, of course, improper and promptly drew objection from defendant's counsel who moved for the withdrawal of a juror and the continuance of the case. The court at once told the jury that the argument was improper and that they should "disregard it entirely, take it entirely out of your minds . . ." and then denied the defendant's motion. It has been held repeatedly that the one best able to evaluate the effect on the minds of the jury of an improper remark or argument is the trial court whose decision will not later be inquired into except for an abuse of discretion: *Menarde v. Philadelphia Transportation Company,* 376 Pa. 497, 509, 103 A. 2d 681; *Narciso v. Mauch Chunk Township,* 369 Pa. 549, 552, 87 A. 2d 233; and *Clark v. Essex Wire Corporation,* 361 Pa. 60, 65, 63 A. 2d 35. In the instant case the learned trial judge (the late Judge ADAMS), in the opinion for the court en banc, said with reference to the objectionable remark, its effect and eradication,—"The argument undoubtedly was improp-

er. We are convinced that it was not intentional. We are also convinced that the defendant's case was not prejudiced thereby." No abuse of discretion is anywhere apparent in the action of the court below.

Judgment affirmed.

---

DISSENTING OPINION BY MR. JUSTICE BELL:

I disagree with the application of the law to the facts of this case; and the verdict, in the light of *all* the facts, shocks my conscience. For these reasons I would grant a new trial.