George H. HOHLWEILER, Esq., Administrator of the Estate of Elford W. Richardson, Deceased

v.

The PENNSYLVANIA RAILROAD COMPANY and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees.

Civ. A. No. 33967.

United States District Court
E. D. Pennsylvania.
Jan. 23, 1969.

Lawrence J. Richette, Philadelphia, Pa., for plaintiff.

Robert Landis, Dechert, Price & Rhoads, Philadelphia, Pa., for Pennsylvania R. Co.

Allen Olmsted 2d, Saul, Ewing, Remick & Saul, Philadelphia, Pa., for Brotherhood of Railway, etc.

## OPINION

HIGGINBOTHAM, District Judge.

### I.  INTRODUCTION

When Elford W. Richardson, the plaintiff now deceased, suffered a fracture of his right ankle while working as a railroad station cleaner on August 13, 1957, he loosed more than the bones of his right ankle. Indeed, Richardson's accident set loose a course of adversary activity and litigation which only now, more than eleven years later, shows signs of concluding.

After retaining and then dismissing Lawrence J. Richette as his attorney, Richardson accepted a settlement agreement with his employer, the railroad, and for a consideration of $8,500 he signed a release before a notary public on May 14, 1958.

Richardson thereafter returned to work for the railroad at his regular job and at other positions according to his Union seniority rights. Because of a hypertensive heart condition—in no way related to his ankle injury—Richardson was disqualified from performing his railroad duties, and he retired on

a railroad disability pension in May of 1960. At that time he made no application for and received no light duty job.

Richette, dismissed by Richardson prior to settlement with the railroad, initiated a state court action against the present defendants for wrongful interference with his one-third contingent fee contract with Richardson. Richette finally prevailed in the state Supreme Court, winning a $15,000 verdict ($10,-000 compensatory damages ‘and $5,000 punitive) on January 21, 1963. Richette v. Solomon, et al., 410 Pa. 6, 187 A.2d 910 (1963).

Richette was rehired by Richardson, and on August 7, 1963, he filed this suit on Richardson's behalf, seeking to overturn the five-year-old agreement between Richardson and the railroad.

Jurisdiction was invoked under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., the Safety Appliance Act, 45 U.S.C.A. § 1 et seq., and the Railway Labor Act, 45 U.S.C.A. § 151 et seq. Plaintiff asked for more than $100,000 in damages on claims of fraud, conspiracy, and discrimination. On October 20, 1967 in accordance with Rule 25 of the Federal Rules of Civil Procedure an order was filed by this court, granting plaintiff's motion to amend the caption in this civil action to substitute for Richardson, now deceased, Mr. George H. Hohlweiler, administrator of the estate.

The parties to this suit, which was heatedly contested and fully briefed are in agreement that the basic issue for decision is: Was the plaintiff Richardson defrauded by a conspiracy or otherwise of his right to a fair settlement for his ankle injury and/or of any right to a 3–G–1 so-called permanent light duty job?

For reasons to be elaborated I find that the plaintiff has failed to meet his burden of proof, has failed to prove that plaintiff was defrauded of a fair injury settlement or of a right to a 3–G–1 job. Judgment is therefore entered in favor of each defendant.

## II. FINDINGS OF FACT

1. Plaintiff Elford W. Richardson was an employee of the Pennsylvania Railroad Company and a member of the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees during all times material hereto.

2. Plaintiff George H. Hohlweiler is the administrator of the estate of Elford W. Richardson, and was substituted as a party to this civil action by an order of this Court filed on October 20, 1967 in accordance with Rule 25 of the Federal Rules of Civil Procedure.

3. Defendant Penn-Central Transportation Company (hereinafter "the railroad") is the corporate successor to the Pennsylvania Railroad Company, one of the original defendants in this civil action.

4. Defendant, The Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees, (hereinafter "the union") is a labor union, certified as the collective bargaining representative of certain railroad employees, including Elford W. Richardson.

5. Richardson suffered a broken ankle on August 13, 1957 while performing his duties as a railroad station cleaner. There is no evidence that any railroad cars or vehicles running on rails were in any way involved in Richardson's accident.

6. Richardson underwent surgery at Presbyterian Hospital. There he was visited by the railroad claim agent, Shultz, who met Richardson's request and advanced him $250 for living expenses, this to be credited against the ultimate settlement of his case with the railroad.

7. In March of 1958 Richardson sought the aid of the defendant union in settling his claim against the railroad. A fellow worker Bernard Spencer referred Richardson to Samuel Solomon, a member of the Lodge Protective Committee.

8. Richardson also spoke to Alexander Novak, Local Chairman of the Lodge Protective Committee, who referred him to Joseph Zawada, a former Brotherhood official. Through Zawada, Richardson met and retained Lawrence J. Richette as his attorney. From this point Richardson's matter advanced along two separate paths which led to the *Richette* case in the state courts.

9. Richette agreed to help Richardson get a fair settlement for his ankle injury and obtain a "light duty" 3–G–1 job.

10. Paragraph 3–G–1 of the collective bargaining agreement then in effect between the railroad and the union provided in part as follows: "By agreement in writing between the Division Chairman and Superintendent of Personnel a disabled employee covered by the scope of this agreement may be assigned to a new position or vacancy, or be placed in an existing position without regard of his seniority or the seniority of any other employee provided he is capable of performing the service."

11. Two days after Richardson signed a power of attorney with Richette, Solomon of the Lodge Protective Committee visited Richardson at home. Solomon argued that Richardson had made a mistake in retaining an attorney and sought to persuade him to revoke the power of attorney he had given to Richette. Solomon told Richardson that an attorney could not get him a 3–G–1 job and that so long as he was represented by a lawyer he could expect no further advances from the railroad on his injury claim.

12. The facts in Finding 11, supra, plus other facts not necessary to detail here were considered in the course of a wrongful-interference-with-contract case in the state courts which terminated in a $15,000 verdict and judgment for Richette. Richette v. Solomon, 410 Pa. 6, 187 A.2d 910 (1963).

13. After Richardson discharged his attorney, the railroad claim agent advanced him another $250 toward settlement of his injury claim.

14. On May 14, 1958 Solomon of the union, representing Richardson, and Shultz for the railroad negotiated an $8,500 settlement of Richardson's injury claim in Richardson's presence.

15. Richardson understood the settlement and signed a release of his claim against the railroad. The release was read to him and he understood its import.

16. There is no evidence of fraud by railroad, or union personnel in arriving at the settlement between Richardson and the railroad; nor is there any evidence of fraud in the execution of the release of May 14, 1958. Richardson had numerous consultations with railroad doctors and was aware of the nature of his ankle injury. The settlement and release were therefore not the result of any mutual mistake of fact.

17. There is no evidence of a conspiracy directed against Richardson in the negotiation of the settlement and execution of the release.

18. Richardson returned to work for the railroad in July of 1958. Dr. Matternes, a railroad doctor, noted that Richardson "wants to go back to work and try it," and issued a return to duty authorization.

19. Richardson held his regular job as a station cleaner and later served as an extra loader-trucker in a railroad freight station.

20. Although Dr. Matternes thought that Richardson would "have some permanent partial disability" (approximately 20%) when he examined Richardson in May 1958, on the basis of a later examination in November of 1958—some five months after Richardson had returned to work apparently without difficulty—the doctor revised his opinion and found that Richardson had no permanent disability connected with his fractured ankle.

21. In May of 1959, after two-and-one-half month periods of service as a station baggageman, Richardson was found by Dr. Matteucci, a Railroad doctor, to be suffering from hypertensive heart disease, in no way connected to his

ankle injury. By reason of this finding Richardson was disqualified from performing his railroad duties.

22. Between May of 1959 and August of 1960 railroad Doctors Matteucci, Lindell, Hadfield, and Bailer all examined Richardson for his heart condition and all found elevated blood pressure, abnormalities of the cardiovascular system and hypertension.

23. In August of 1960 Dr. Hursh, the Chief Medical Examiner of the Railroad reviewed Richardson's case, and at his direction the Medical Department submitted to the Railroad Retirement Board its recommendation that Richardson retire.

24. Richardson applied for and received a disability pension, effective May 14, 1960.

25. Until August 7, 1963 Richardson never attempted to repudiate the settlement he made with the railroad on May 14, 1958 for his accident of August 13, 1957.

26. Construing the evidence in its most favorable light for plaintiff, the evidence is still inconclusive as to whether Richardson, through any representative, made a request in accordance with contract procedures for a 3–G–1 job; there is no credible evidence that Richardson personally made a direct request for such a job.

27. There is no evidence that Richardson's retirement was related to his ankle injury or that he was in fact disabled by it. Nor is there evidence that Richardson was forced to apply for a disability pension.

28. There is no evidence that Richardson's union or any members of the union acted toward Richardson or on his behalf in a biased or prejudiced manner. He was not discriminated against by his union.

### III. DISCUSSION

Jurisdiction is alleged by plaintiff to rest on the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., the Safety Appliance Act, 45 U.S.C.A. § 1 et seq.,

and the Railway Labor Act, 45 U.S.C.A. § 151 et seq.

Turning immediately to the substantive merits, plaintiff is confronted by an insurmountable obstacle to his success in this action: the existence of a valid written and signed release of his claim. The release was signed by Richardson on May 14, 1958 in consideration of an $8,500 settlement with the railroad.

The "validity of releases under the Federal Employers' Liability Act raises a federal question to be determined by federal rather than state law." Dice v. Akron, Canton and Youngstown Railroad Company, 342 U.S. 359, at 361, 72 S.Ct. 312, at 314, 96 L.Ed. 398 (1952). Under federal law the burden of avoiding a settlement agreement under the Federal Employers' Liability Act rests on the party that asserts its invalidity. "One who attacks a settlement must bear the burden of showing that the contract he made is tainted with invalidity, either by fraud practiced upon him or by a mutual mistake under which both parties acted." Callen v. Pennsylvania Railroad Company, 332 U.S. 625, at 630, 68 S.Ct. 296, at 298, 92 L.Ed. 242 (1948).

Plaintiff has failed to show fraudulent action on the part of either defendant in the course of events leading to the settlement agreement between Richardson and the railroad and his execution of a release. Nor does plaintiff point to any mutual mistake under which the parties acted. Richardson claimed during the *Richette* litigation that the release was never read to him, but he did recognize the release and identify his signature on it. The deceased railroad worker recalled that Solomon of the Brotherhood had consulted him prior to the settlement negotiations and had said the injury "ought to be worth about $9,000." Moreover, Richardson agreed that he had signed the release in exchange for a check of $7,025 (the $8,500 figure less advances).

In testimony before this Court, Mr. Harry W. Reed, the notary public who notarized the release, stated that the release was read to Richardson, who said

that he understood it. In the face of the foregoing—the release was read to Richardson, he recognized it and identified his signature on it, he accepted a $7,025 check for it, and did nothing for more than five years to avoid the settlement—in the face of these facts it is clear that plaintiff has not met his burden in seeking to set aside the Federal Employers' Liability Act settlement on the ground of fraud.

■ The plaintiff has sought to contend in various ways that the issues of liability and proper compensation for his injuries were litigated and settled in the *Richette* case, that fraud was there established. But a fraud practiced upon a lawyer to remove him from a case is not necessarily a fraud upon his client. As Judge Kirkpatrick observed in denying plaintiff's motion for a partial summary judgment (opinion filed October 13, 1965): "Obviously the causes of action in the two cases [*Richette* and the case at bar] are not the same." Richardson's claim for damages for an injury to his leg is an "entirely different" cause from Richette's claim for damages for loss of a profitable contract for professional employment. Judge Kirkpatrick held that res judicata did not apply because the parties in the two actions were different, the causes of action were different and no privity existed between Richardson and Richette. This is the law of the case.

■ While the railroad is not entitled to lavish praise for excessive generosity in its settlement, nevertheless, the amount offered and accepted is neither so patently inadequate or so unreasonable as to be fraudulent on its face. There was uncontradicted medical testimony in this Court that Richardson suffered no permanent disability and therefore the settlement was for a fractured ankle and wage losses in the neighborhood of $3,000.

Plaintiff's effort to rescind the settlement of May 1958 is further hampered by the defenses of the statute of limitations and laches. Not until August of 1963, with the filing of the complaint in this action more than five years after the settlement, did Richardson attempt to repudiate the settlement. The statute of limitations under the Federal Employers' Liability Act is three years. 45 U.S.C.A. § 56. But no further discussion is required as I have found on the merits that plaintiff has not met the burden of avoiding the release.

■ The Safety Appliance Acts have no application at all to this case because no railroad cars running on rails were in any way involved in Richardson's accident. See 45 U.S.C.A. § 8; Johnson v. Southern Pacific Railroad Company, 196 U.S. 1, 25 S.Ct. 158, 49 L.Ed. 363 (1904), and Baltimore and Ohio Railroad Company v. Jackson, 353 U.S. 325, 77 S.Ct. 842, 1 L.Ed.2d 862 (1957).

■ Richardson's claim under the Railway Labor Act is based on his failure to get a 3–G–1 so-called permanent light duty job. There is no evidence in the record that such a job was in fact available, or that Richardson was capable of handling a job that might fit under the 3–G–1 classification. Most important, under the terms of the collective bargaining agreement then in force a 3–G–1 job could only be awarded "by agreement in writing between the Division Chairman and Superintendent of Personnel." The Division Chairman testified in this Court that no one had ever approached her with respect to obtaining a 3–G–1 job for Mr. Richardson.

Jurisdiction over defendant brotherhood is based on the Railway Labor Act as interpreted in Steele v. Louisville & N. R. Co., et al., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944). The *Steele* doctrine is expressed in the holding of that case that Congress has imposed "on the bargaining representatives of a craft or class of employees the duty to exercise fairly the power conferred upon it in behalf of all those for whom it acts, *without hostile discrimination against them.*" 323 U.S. 192, at 202 & 203, 65 S.Ct. 226, at 232 (italics added).

The Third Circuit Court of Appeals understood the *Steele* rule to be that: "a union which possesses the power to act

for all employees of a bargaining unit has the corresponding duty to represent all the members of the unit fairly, impartially and in good faith without 'hostile discrimination.'" "In particular plaintiff must make a showing that the action or inaction of the statutory representative complained of was motivated by bad faith for the gravamen of the rule is 'hostile discrimination.'" Gainey v. Brotherhood of Railway and Steamship Clerks, 313 F.2d 318, at 322 & 323 (3d Cir. 1963).

■ Plaintiff has produced no evidence of hostile discrimination by the defendant union or any of its members directed against Richardson. No bad faith has been shown. Plaintiff's claim of a conspiracy between the railroad and the union to deprive Richardson of his rights is likewise unsupported by evidence. Thus, the judicial intervention required by *Steele*, supra, and reaffirmed in Glover v. St. Louis-San Francisco Ry. Co., 393 U.S. 324, 89 S.Ct. 548, 21 L.Ed. 2d 519 (January 14, 1969) is not warranted in this case by reason of plaintiff's failure to meet the *Steele* burden of proof.

■ Treating this case as a diversity case and looking to the substantive law of Pennsylvania, I find that the burden of proof again rests on the one who would avoid a release on the ground of fraud. Spritzer v. Pennsylvania Railroad Company, 226 Pa. 166, at 168, 75 A. 256 (1910); Keys v. Hanscom Brothers, 288 Pa. 389, at 392, 135 A. 860 (1927); Wilbert v. Pittsburgh Consolidation Coal Company, 385 Pa. 149, 122 A.2d 406 (1956). As elaborated above plaintiff has not met that burden.

Plaintiff's Findings of Fact 1, 3–5, 7–10, 12, 14–16, 20, 21, and 27 are affirmed. All other findings inconsistent with this opinion are denied.

All of Plaintiff's Conclusions of Law are denied.

Defendant railroad's Findings of Fact 1–4, 6–46 are affirmed. All other findings of fact inconsistent with this opinion are denied.

Defendant railroad's Conclusions of Law 1 and 4–11 are affirmed. 2 and 3 are denied as stated.

All of defendant Union's Findings of Fact are affirmed.

In light of the above findings of fact and discussion, I make the following conclusions of law.

## IV. CONCLUSIONS OF LAW

■ Richardson's claim under the Federal Employers' Liability Act is barred by the valid and binding release that he executed in consideration of the $8,500 settlement agreement with the railroad.

■ 2. There can be no union liability under the Federal Employers' Liability Act since the defendant union is not the plaintiff's employer.

3. There is no evidence upon which relief may be granted against the railroad or the union for any claim arising under the Safety Appliance Acts since these acts apply to cases involving trains, locomotives and railroad cars running on rails. Safety Appliance Acts 45 U.S.C.A. § 1 et seq.

4. Plaintiff has failed to prove his charges of fraud, conspiracy, and discrimination.

5. The defendant union was not guilty of hostile discrimination toward Richardson and therefore is not liable to plaintiff under the Railway Labor Act. Railway Labor Act, 45 U.S.C.A. § 151 et seq. Steele v. Louisville & N. R. Co., et al., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173 (1944), and Gainey v. Brotherhood of Railway and Steamship Clerks, 313 F. 2d 318 (3d Cir., 1963).

6. Treating this case as a diversity matter, I still conclude that plaintiff's claim is barred by the existence of a valid and binding release.

Judgment is entered in favor of the defendants, Penn-Central Transportation Company, and the Brotherhood of Railway and Steamship Clerks, Freight Handlers, Express and Station Employees.