# McClure *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Railroads—Master and servant—Fellow servant—Act of April 4, 1868, P. L. 58.*

1. In an action against a railroad company to recover damages for personal injuries it appeared that the plaintiff at the time of the accident had been in the employ of a manufacturing company for one day and was without special knowledge of the premises where he was injured. At the time of the accident he was employed in shoveling ashes which had accumulated on his employer's sidewalk at a point where a spur track extended from the railroad to the manufacturing company's plant. While so employed a locomotive started to cross the sidewalk without warning to plaintiff. When it was within eight feet of him plaintiff jumped to a position of refuge where he was safe in so far as the wheels of the engine were concerned but where he was caught on the return of the engine by the overhang of one of the cars which it was drawing from the yard. The evidence tended to show that the defendant's employees were familiar with the place, saw the plaintiff in his position of danger, and failed to warn him. *Held*, (1) that the question of the defendant's negligence was for the jury, and (2) that the plaintiff was not a fellow servant of the defendant's employees within the meaning of the Act of April 4, 1868, P. L. 58, then in force.

*Negligence—Release—Joint tort feasors.*

2. A release of damages for personal injuries given by an employee to his employer in consideration of a voluntary payment to him of the

sum of $75.00 will not be a bar to a recovery against a railroad company whose negligence was the cause of the injuries, where it appears that the payment was made without any prior suit or demand, that the injuries were serious and that the employer was not guilty of any joint or separate act of negligence, which contributed to the injuries in question.

Argued Dec. 11, 1912. Appeal, No. 28, Oct. T., 1912, by defendant, from judgment of C. P. No. 3, Phila. Co., June T., 1907, No. 2,550, on verdict for plaintiff in case of David McClure v. Pennsylvania Railroad Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before FERGUSON, J.

At the trial it appeared that the plaintiff was seriously injured on May 9, 1907, while in the employ of the Kensington Hygeia Ice Company at Trenton avenue and Huntingdon street, city of Philadelphia. The circumstances of the accident are fully stated in the opinion of the Superior Court.

At the trial the plaintiff presented the following points:

1. If the jury believe from the evidence that the plaintiff McClure was placed in a position of sudden peril by the near approach of defendant company's locomotive, without due warning, then the plaintiff was not bound to remove to such place as it now appears would have been the safest place. The plaintiff in sudden peril was bound only to use his best judgment under all the circumstances, and if plaintiff jumped to a position that he believed was safe, or to the only place that he could have reached in safety, to avoid being struck by the engine, he was not guilty of contributory negligence. *Answer:* I affirm that point. [1]

2. If the jury believe from the evidence that the plaintiff McClure was through no fault of his own placed in a position of sudden peril through the approach of the defendant's engine without reasonable

warning having been given, then plaintiff was not then bound to use all possible means of safety, but if plaintiff acted in good faith and assumed a position, either at or inside the wall, that he believed to be safe, and if his conduct under all the circumstances was that of a man of ordinary prudence, he was not guilty of contributory negligence. *Answer:* I affirm that point. [2]

3. If the jury believe from the evidence that the plaintiff and his fellow workman, upon the approach of the locomotive, left the tracks and assumed a position which plaintiff believed to be safe; that the engineer of the locomotive saw plaintiff in this position, and that the engineer knew or ought to have known that plaintiff was in a position of danger, and that the engineer had the time to warn plaintiff of his danger before the train started out of the siding yard, it was the duty of defendant's engineer to give that warning, and failure to do so was negligence, for which the defendant company is answerable. The jury is entitled to consider, in determining whether the engineer knew the place where plaintiff was to be dangerous, the testimony of the engineer and the other witnesses of the length of time the engineer had been operating an engine on this particular siding; also the engineer's testimony that he was familiar with the hang-over of different length cars, and with the length of the cars which were coupled to the engine on this siding just prior to this accident. *Answer:* I affirm that point. [3]

4. If the jury believe from the evidence that the conductor, engineer or any other member of the crew of defendant's shifting engine which was drawing the car that crushed plaintiff, saw the plaintiff in a position that the conductor, engineer or other member of the crew who thus saw the plaintiff knew to be dangerous, and that there was sufficient time before the engine completed the coupling and started out of the yard to have given plaintiff warning and to have allowed plain-

tiff to remove from the dangerous place, it was the duty of such member of the crew to give that warning, and failure to do so was negligence, for which defendant is answerable, if the failure to give such warning resulted in the injury to plaintiff. *Answer:* I affirm that as a correct statement of the law. [4]

6. Irrespective of whether plaintiff and his companion were placed in sudden peril by the negligence of defendant's servants, if plaintiff was seen by any of the crew of the engine to be in a position of danger and there remained time for plaintiff to be warned of his danger, and to be permitted to move to a place of safety, it was the duty of any member of the crew who saw plaintiff in such dangerous place to give him warning and to take reasonable precaution to give plaintiff the opportunity to escape before the train was put in motion on its way out of the shed or yard; and if the failure to so warn plaintiff and to allow him to seek a safe position was responsible for the injury to the plaintiff, the defendant company is answerable to plaintiff for the negligence of its employee. *Answer:* I affirm that point. [6]

Defendant presented these points:

1. It is in proof by the defendant, not denied by the plaintiff at the trial, admitted by him in his release and therefore an established fact, that the negligence of the Kensington Hygeia Ice Company contributed to the accident in which the plaintiff was hurt. This negligence of the Hygeia Ice Company makes it and the defendant (were the defendant in fact negligent) joint tort feasors, and a release given to the one would in law discharge the other from liability to the plaintiff. Such a release having been given to the Hygeia Ice Company, there can be no recovery against the defendant in this suit. *Answer:* Refused. [6]

2. All the presumptions are in favor of the integrity of a solemn instrument duly executed and sealed in the presence of credible subscribing witnesses, and these

presumptions are not to be overcome by any such loose, uncertain and doubtful testimony as was offered by the plaintiff in this case against the release offered in evidence. *Answer:* Refused. [7]

3. Under all the evidence in the case the verdict should be for the defendant. *Answer:* Refused. [8]

Verdict and judgment for plaintiff for $1,500. Defendant appealed.

*Errors assigned* were (1–8) above instructions, quoting them.

*Sharswood Brinton,* with him *John Hampton Barnes,* for appellant.—There was no evidence sufficient to establish the negligence of the defendant, but on the other hand the testimony of the plaintiff himself was such that in contemplation of law the negligence, if any, was either his own or that of his employer.

The plaintiff must be regarded as a fellow servant with the crew of the train, within the provisions of the act of 1868, and, therefore, as assuming the risks of his employment so as to defeat the present action: Lewis v. R. R. Co., 220 Pa. 317; Keck v. R. R. Co., 206 Pa. 501; Spisak v. B. & O. R. R. Co., 152 Pa. 281; Ricard v. North Pa. R. R. Co., 89 Pa. 193; B. & O. R. R. Co. v. Colvin, 118 Pa. 230; Cummings v. P. C. & St. L. Ry. Co., 92 Pa. 82; Stone v. R. R. Co., 132 Pa. 206.

Plaintiff having executed a deed for a valuable consideration releasing a joint trespasser of the defendant (if in point of fact the defendant was negligent at all) from all damages for the personal injuries he has suffered, that deed of release in law discharged the defendant from liability to the plaintiff: O'Shea v. R. R. Co., 105 Fed. Repr. 559; Lacy v. Kinaston, 1 Lord Raymond, 688; Ruble v. Turner, 2 Hen. & Munf. (Va.) 38; Milliken v. Brown, 1 Rawle, 391; Cridland v. Floyd, 6 S. & R. 412; Williams v. LeBar, 141 Pa. 149;

Seither v. Traction Co., 125 Pa. 397; Thomas v. R. R. Co. of N. J., 194 Pa. 511; Thorp v. Boudwin, 228 Pa. 165; Tompkins v. R. R. Co., 66 Cal. 163.

*Edwin O. Lewis*, for appellee.—It was the engineer's duty to look ahead, and if he saw plaintiff in a place of danger, to give him warning: Keller v. P. & R. Ry. Co., 241 Pa. 82; Moore v. P., W. & B. R. R. Co., 108 Pa. 349; Holt v. P. R. R. Co., 206 Pa. 356.

The plaintiff was not a fellow servant with the crew of the train: Spisak v. R. R. Co., 152 Pa. 281; Keck v. Philadelphia & Reading R. R., 206 Pa. 501; Christman v. R. R. Co., 141 Pa. 604; Richter v. Penna. Co., 104 Pa. 511; Engle v. Pennsylvania R. R. Co., 234 Pa. 305.

The release offered in evidence was not of a joint tort leasor, actual or constructive; was not given for a satisfaction, actual or intended; was immaterial and irrelevant to the issue, and not a bar to plaintiff's recovery: Peterson v. Wiggins, 230 Pa. 631; Thomas v. R. R. Co., 194 Pa. 511.

The release is conclusive only between the parties thereto, and parol evidence was admissible to show that appellee had made no demand against the ice company, had not charged it with negligence, and that the sum received by appellee was not tendered or received as a satisfaction for the whole injury, and was in fact a mere voluntary payment or gratuity, not furnishing an adequate consideration for the release.

Opinion by Head, J., July 16, 1913:

On the day before the occurrence which resulted in his injury, the plaintiff took employment with the Hygeia Ice Company as an assistant fireman for the boilers used in the operation of the company's plant. These boilers were located below the surface of the street on which the company's building fronted. The ashes caused by the operation of the boilers were first gathered in a pit which

extended into and under an open shed, part of the plant. From this pit they were shoveled by hand to the street or sidewalk above, whence they were later removed. From an adjacent switch or siding of the defendant railroad company a spur track extended into the shed mentioned over the ash pit. This spur was to enable the ice company to have cars consigned to it pushed into its shed where they could be unloaded. On the day of the accident the plaintiff and his fellow fireman were engaged in shoveling ashes from the pit mentioned to the sidewalk. In doing this a considerable quantity of the ashes fell on the spur track mentioned and had to be removed before cars could safely pass over the rails. At that time two empty freight cars were standing on the spur track in the back part of the shed. An engine of the defendant company was standing on its siding some distance away, and it was the purpose of the crew operating it to enter the shed as soon as the tracks were cleared and pull out the two empty cars aforesaid. The plaintiff alleges that whilst the two firemen were busily engaged in clearing the tracks, and before they had completed their task, the locomotive of the defendant was moved down without any warning on to the spur track, and that when the first notice was given them by the ringing of the bell the engine was but eight feet away from them and moving as rapidly as a man could walk. They were thus placed in imminent danger and compelled to suddenly seek some place of safety to avoid being crushed. They both jumped for and succeeded in reaching a portion of the foundation or frame of the building in time to escape the wheels of the moving engine and were, so far as that danger was concerned, safe enough. When the front of the engine reached the first of the cars to be moved, it came to a standstill and the cab was just opposite the point where the plaintiff and his fellow workman were standing and so close that they could have stepped into the cab had they been advised there was danger in remaining where they were. The spur track entered the shed on a curve with the con-

vex side next to the point where the plaintiff was standing. The car first to be pulled out was what is called, in the testimony, "a long car." The body of it was so seated on the trucks that in moving it out on the curve track there would necessarily be such an overhang as would make the position of the plaintiff and his fellow fireman extremely perilous. The defendant's servants, operating its engine and about to move the cars, were all familiar with the facts just stated, having been for a long time engaged in moving cars into and out from that shed, while the plaintiff had no knowledge at all that the place he occupied was not safe. When the engine moved out of the shed drawing the cars, the overhang caught the two unfortunate men between the stanchions of the car and the side of the building. The one was killed and the plaintiff suffered serious injury.

There was much conflict in the testimony as to the exact manner in which the accident happened and the defendant contended in the first place that the evidence disclosed no act of negligence on the part of its servants and that a binding direction in its favor should have been given to the jury. It is urged upon us that even in the testimony of the plaintiff himself are to be found some contradictions, but it is argued with just as much force that the witnesses of the defendant are not in entire harmony with each other on certain material questions of fact. However this may be, it is clear to us that there was evidence produced by the plaintiff which would warrant the jury in finding all of the facts that we have stated. Were those facts found favorably to the plaintiff, the learned trial court could not have properly declared, as a matter of law, that the defendant's servants had been guilty of no act of negligence. The plaintiff had been placed in a position of imminent peril by the negligent approach of the locomotive without timely warning. In the effort to avoid that peril he had found a place of apparent safety. It being shown that the defendant's servants had knowledge that the next movement of the

locomotive with the long car attached would convert that place of safety into one of danger from a source unknown to the plaintiff, it was for the jury to say whether or not a reasonable regard for the safety of the plaintiff would not have required the defendant's servants to give him notice of the approaching peril and an opportunity to escape it. The first proposition of the appellant is therefore untenable.

It is next argued that even if the defendant's servants were guilty of negligence, yet the plaintiff cannot recover because they were his fellow servants under the operation of the Act of April 4, 1868, P. L. 58 (then in force but shortly thereafter repealed), and their negligence would consequently furnish no basis for a recovery by him against the defendant.

Without attempting to review the many cases in which the statute referred to has been construed by the courts, we content ourselves with a single excerpt from the opinion of Mr. Justice MITCHELL in Spisak v. R. R., 152 Pa. 281, cited as a leading case by counsel on both sides. After quoting the language of the statute, the learned justice points out in the following language the two classes into which the cases may be properly grouped: "Upon the distinction thus expressed the cases divide themselves into two classes. In the first the place of the accident is clearly and for general purposes the 'roads, works, depots or premises' of the railroad company. In such cases it is sufficient if the person injured is lawfully 'engaged or employed on or about' them, and is not a passenger. . . . The other class is where the accident occurs in a place which is not exclusively and for general purposes, but only within a limited and statutory sense, the premises of the railroad company. In this class the nature of the employment at which the party injured was engaged at the time, becomes material. If it is business connected with the railroad in the sense that it is ordinarily the duty of railroad employees, then while the party is engaged at it the statute treats him as a quasi employee, and puts

his rights upon the same basis. If, however, the work has no relation to railroad work as such, and is connected with the railroad only by irrelevant and immaterial circumstances of locality, the case is not within the statute at all." The doctrine of this case is reaffirmed in Engle v. Penna. R. R. Co., 234 Pa. 305, where the language we have quoted is cited with approval. A reference to the facts established by the verdict as we have heretofore stated them seems to us to leave no reasonable doubt that the present case falls within the second class above described and it must follow, therefore, that the learned court below could not have properly instructed the jury, as a matter of law, that the plaintiff was a fellow servant with the crew operating the defendant's locomotive, and the second line of defense accordingly fails.

The defendant offered in evidence a paper signed by the plaintiff in which it is stated that the latter was injured while in the service of the ice company under circumstances which he claimed rendered his employer liable in damages; that the employer denied such liability and that the parties being desirous to compromise, the employer had given and the plaintiff had received $75.00, in consideration of which he released his employer from all liability by reason of said injury, etc. Thereupon the learned court below was asked to instruct the jury that the plaintiff could not recover on the theory that, taking the case in the aspect most favorable to him, his injury had been caused by the joint act of two tort feasors, and his acceptance of satisfaction from the one constituted a bar to any recovery by the other. The legal proposition here involved has been argued out by counsel on both sides in exceptionally able briefs exhausting all the learning on the subject, both in our own and foreign jurisdictions. We have given attentive consideration to the arguments of counsel and examined with care the cases cited.

Where two or more tort feasors unite in doing an act which works a single injury to another, the party injured may sue in one action all of the wrongdoers, or he may

bring a separate action against each. If he adopt the latter alternative, he may pursue each separate action to judgment, but he may have only one satisfaction for his single injury. This necessarily follows from the fact that his legal remedy is given to him only to afford him compensation for the wrong that has been done to him, and when that compensation has been received from any one of the wrongdoers, his right to any further remedy is at an end. No attack whatever is made on the soundness of this principle. But it is clear that before it may be successfully invoked by a party defendant, it must appear in some way that the third party from whom the alleged satisfaction has come, was in fact a joint tort feasor with the defendant. In some cases this is to be determined by matter of record, and it then becomes a question of law for the court upon an inspection of the pertinent record. To this class belong the cases where the injured party has brought an action at law against one alleged to be a tort feasor and has recovered against him, and thereafter, for the same injury previously declared on, attempts to recover from another. In other cases the crucial question must be determined by matter in pais, and then it becomes a mixed question of law and fact to be determined by a jury under proper instructions unless all of the attending facts and circumstances are admitted or established by undisputed testimony.

To the class first mentioned undoubtedly belongs Seither v. Traction Co., 125 Pa. 397. In that case the plaintiff, riding in a street car of the People's Passenger Railway Company, was injured in a right-angled collision between that car and one of the Philadelphia Traction Company. He brought an action against the first named company in which he alleged that his injury resulted from the negligent operation of its car and he prosecuted that action to trial and verdict for a large sum of money. The trial court set aside that verdict and awarded a new trial. While it was pending a settlement was reached by the parties, as a result of which the plaintiff received from the

defendant he had sued the sum of $6,000 in considera-
tion of which he released that company from any further
liability on account of his injury, but undertook to reserve
the right to prosecute the action which he had also begun
against the Philadelphia Traction Company. On the trial
of the latter case it was held that the plaintiff was barred
from a recovery because in the language of the Supreme
Court he "had received one satisfaction, he was not
entitled to a second."

In Thomas v. Central Railroad Co. of New Jersey, 194
Pa. 511, it appeared that the representative of the plaintiff
was an engineer of the Philadelphia & Reading Railroad
Company; that while hauling an express train of that
company over the tracks of the Central Company he was
killed in a collision which had been caused by the breakup
of a freight train preceding him and the consequent
obstruction of the track on which he was hauling his
train. It was alleged that the obstruction, which thus
caused his death, was brought about by the negligent act
of the defendant company, and the action was begun
against the latter company to recover damages. By way
of defense that company undertook to offer in evidence the
fact that the deceased was a member of the relief associa-
tion of the Philadelphia & Reading Railroad Company;
that his widow, the plaintiff, had received from that
company a sum of money and in consideration thereof had
executed and delivered to that company a release of
any liability for damages by reason of the death of her
husband. It was argued that the company last named had
at least contributed to the injury by reason of the manner
in which it had prepared and sent out the long train of
freight cars that had broken up and thus caused the
collision. The learned trial court rejected the offered
evidence and the plaintiff was permitted to recover. On
appeal to the Supreme Court the rejection of the offered
release was assigned for error, and in passing on that
assignment Mr. Justice MITCHELL said: "It is further
argued that the negligence of the Reading Railroad

Company in making up this train of empty cars, if not the proximate, was at least a concurrent cause of the accident, and the court erred in excluding evidence of a settlement and release by the plaintiff of the joint tort feasor. But there was no evidence that the Reading Company was negligent. . . . The evidence of release of the Reading Company was therefore irrelevant," and a judgment for the plaintiff was affirmed.

In Peterson v. Wiggins, 230 Pa. 631, the rule is thus stated by Mr. Justice STEWART: "Cases may arise where, whether the party sued separately was a joint trespasser becomes a question to be decided only by a jury; there are others, however, where the question is for the court. If the settlement and release relied on follow a suit at law, either before or after final adjudication, it would be for the court to decide from an inspection of the record whether the cause of action was the same in both cases, and determine whether defendant was sued as a joint trespasser or otherwise, unless there were independent facts in dispute bearing on the question."

In the case at bar the testimony, without dispute in these respects, shows that the plaintiff never brought any action at law against the ice company, nor did he ever threaten to bring such action to secure money from that company. The testimony fails to disclose any act of negligence whatever on the part of the ice company. There was nothing intrinsically dangerous, either in the character of the work which the plaintiff was to perform for his employer nor in the place where that work was to be done. In no proper sense could it be said that his injury was connected with any breach of duty by his employer in either of the respects mentioned. So far as the evidence before the lower court exhibited the situation, the plaintiff's injury was solely due to the negligent intervening act of the defendant company and its servants, over whose action the ice company had no control, and whose negligence it could not foresee and was not bound to anticipate. The evidence in the case further

discloses that the money mentioned in the paper signed by the plaintiff was the voluntary gift of the ice company, made on its own initiative, part of it sent to the plaintiff while confined either to the hospital or his house, and the remainder given to him at an interview which followed an invitation from the officer of the ice company. The paper was written by the ice company and the language of it was the language of its officer. It is true, the plaintiff, by signing it, subscribed to a declaration that he claimed the ice company to be liable for his injury, but this was not conclusive upon him or upon the court below, and the amount of money received by him was so trifling, compared with the injury he sustained, that he could plausibly urge, even as against the ice company, that he had not received satisfaction from anybody and that he had not knowingly and intentionally undertaken to release anyone whom he believed to be liable for the injuries he had sustained.

Under the facts exhibited by this record we cannot see how the learned trial court could have declared, as matter of law, that the plaintiff was barred from a recovery in the present case by reason of his signature of the receipt or release to the ice company, already referred to, and therefore the defendant's request for a binding direction to the jury in its favor on this account was properly refused. After a careful review of all of the questions involved we are all of the opinion that the case was well tried and that the record discloses no reversible error. The assignments of error are therefore overruled.

Judgment affirmed.