Smith, Appellant, *v.* Fenner.

Argued January 11, 1960. Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*Everett Kent,* with him *S. M. Flitter,* for appellant.

*J. Douglas Fackenthal,* with him *Edward J. Danser,* and *Fackenthal, Teel & McGiffert,* for appellees.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, May 23, 1960:

We have before us an appeal in each of two distinct actions: a personal injury action and an equity action, the latter seeking to render void a release given to one of three alleged joint tortfeasors by the plaintiff in the personal injury action. The basic issue is the impact, if any, upon this release of the Uniform Contribution Among Tortfeasors Act (herein called Uniform Act) of July 19, 1951, P. L. 1130, 12 PS §§2082-2089.

Shortly after midnight on June 4, 1950, two automobiles—owned by Joseph Falcone and Ruth P. McBeth, respectively—were standing upon state highway 712, Upper Mount Bethel Township, Northampton County, with the bumpers of both automobiles interlocked. Herbert Smith, aiding Falcone and McBeth, was engaged in attempting to disengage the interlocked bumpers. An automobile driven by Donald Fenner then came along the highway, struck the McBeth automobile and Smith causing the latter very serious personal injuries.

Smith instituted an action for his personal injuries against Falcone and McBeth alleging they were, severally and jointly, liable for the happening of the accident. Falcone and McBeth then joined Fenner as an additional defendant on the theory that Fenner was either solely, or, jointly with them or either of them, liable to Smith, or liable over to them or either of them. Fenner, in his answers to Smith's complaint and to Falcone's and McBeth's complaint, affirmatively defended on the ground that Smith, on May 28, 1952, had

given him a written release* which precluded any liability on his part not only to Smith but also to Falcone and McBeth. Falcone's and McBeth's answer to Smith's complaint averred that this release effectuated

---

* This release reads as follows: "Know all men by these presents, that . . . Smith, being of legal age, for and in consideration of the payment of Four Thousand five hundred ($4,500) Dollars by Willis Fenner and Donald Fenner the receipt of which is hereby acknowledged, have released and discharged, and by this release do for myself, my heirs, executors, administrators and assigns, release and discharge the said [Fenners] from all claims, damages, actions and suits of whatsoever kind, known or unknown prior to and including the date hereof, and particularly for all injuries to person or damage to property, known or unknown, resulting from or to result from an accident which occurred on or about the 4th day of June, 1950, at or near Route 712 east of Bangor, Pennsylvania.

"Should it appear that two or more persons or entities are jointly or severally liable in tort for the said injuries to person or damage to property resulting from or arising out of said accident, the consideration for this release shall be received in reduction of the total damages recoverable against all the other tortfeasors to the extent of the pro rata share of the said [Fenners] and I specifically reserve all claims and causes of action arising out of the above-mentioned accident against all the other tortfeasors.

"The payment made to me is upon my warranty that I have not received heretofore any consideration whatever for, nor have I released heretofore any person, firm, or corporation from any claim or liability for any injuries to person or property arising from said accident, and I agree to hold harmless and indemnify the said [Fenners] and his Insurance Carrier of and from any loss, claim, liability, cost or expense growing out of any claim against them or either of them for contribution by any alleged joint tortfeasor under the Uniform Contribution Among Tortfeasors Act of the Commonwealth of Pennsylvania.

"I further state I have carefully read the foregoing Release and know the contents thereof, and that I am signing the same as my own free act. I further intend to be legally bound by the promises herein contained."

not only a release by Smith of Fenner, but also of Falcone and McBeth.

Falcone and McBeth filed a motion for judgment on the pleadings raising two questions: (1) whether Smith's release of Fenner released Falcone and McBeth; (2) the applicability of the Uniform Act to this cause of action which arose prior to the effective date of the Act. President Judge BARTHOLD held that, while the Uniform Act was inapplicable, judgment could not be entered on the pleadings since Smith, despite the release of Fenner, could recover if he proved that Falcone and McBeth were alone liable: *Smith v. Falcone et al.*, 85 Pa. D. & C. 463.

When the matter came for trial before Judge WOODRING and a jury, the court, while submitting the case to the jury generally, presented six specific questions for the jury's determination. The jury returned a verdict generally for $110,833.17 against all three defendants—Falcone, McBeth and Fenner—and specifically found: (a) Smith was not contributorily negligent; (b) neither Falcone nor McBeth nor Fenner was solely liable; (c) that joint negligence of Falcone and McBeth was not the legal cause of the accident; (d) that the joint negligence of Falcone, McBeth and Fenner was the legal cause of the accident. Motions for judgment n.o.v. were granted and judgment entered for Falcone, McBeth and Fenner. From the entry of such judgment an appeal was taken. That judgment was entered upon the theory that Smith's release of Fenner released Falcone and McBeth as well as Fenner.

Approximately six months after rendition of the verdict in the personal injury action, Smith instituted an equity action against Falcone, McBeth and Fenner seeking to cancel, or modify the terms of, the release. In this action, Smith's theory, as alleged, was that, since Fenner now claimed that the release exonerated

not only him but also Falcone and McBeth, Fenner "is engaged in an attempt to avoid his own release; and such conduct is a fraud in fact and in law; and, therefore, by his own act [Fenner] has made said release null and void". Preliminary objections filed in this action were upheld and the court below dismissed the complaint. From that decree an appeal has been taken.

The appeal in the personal injury action commands our initial consideration. The nub of that appeal is the efficacy of the release so far as Falcone and McBeth are concerned which, in turn, depends upon the applicability to the release of the provisions of the Uniform Act.

In passing upon the motion for judgment on the pleadings President Judge BARTHOLD well stated the status of the law in the pre-Uniform Act period: "Prior to the passage of the Uniform Act the rule was well established in Pennsylvania that a release of one joint tortfeasor operates as a release of the other joint tortfeasor. In Thompson v. Fox, 326 Pa. 209 (1937), the Supreme Court at pages 212, 213, said: 'For the same injury, . . . an injured party can have but one satisfaction and the receipt of such satisfaction, either as payment of a judgment recovered or consideration for a release executed by him, from a person liable for such injury, necessarily works a release of all others liable for the same injury and prevents any further proceedings against them: . . . the principle which underlies the rule is that the injured person is given a legal remedy only to obtain compensation for the damage done to him, and when that compensation has been received from any of the wrongdoers, his right to further remedy is at an end.'

"See also Mason C. Lewis v. Lavine, Inc., 302 Pa. 472 (1931); Smith v. Roydhouse, Arey & Company,

244 Pa. 474 (1914); Peterson v. Wiggins, 230 Pa. 631
(1911). The rule was applicable 'even though it was
intended, or the release expressly stipulated, that the
other wrongdoers should not thereby be released:'
Union of Russian Societies of St. Michael and St.
George, Inc. v. Koss, et al., 348 Pa. 574 (1949);
Thompson v. Fox, supra, 213; Williams v. LeBar et al.,
141 Pa. 149 (1891); Seither v. Philadelphia Traction
Co., 125 Pa. 397 (1889); and it was immaterial
whether the tortfeasors involved committed a joint tort
or concurrent or successive torts. The rule applied
where both were liable for the same damage no matter
upon what theory their respective liabilities were
predicated: Thompson v. Fox, supra, 213.

"It was also a well-established rule in Pennsylvania
prior to the passage of the Uniform Act, that before
there could be a joint tort there must be a community
of fault which occasioned the accident: Cleary v.
Quaker City Cab Co. et al., 285 Pa. 241 (1926); Hol-
stein et al. v. Kroger Grocery & Baking Company et
al., 348 Pa. 183 (1943); Landis, Admx. v. Conestoga
Transportation Company et al., 349 Pa. 97 (1944).
If there was no community of fault there was no joint
tort; hence, a release of one not shown to be liable
would not release a tortfeasor: Koller v. Pennsylvania
Railroad Company, 351 Pa. 60, 63 (1944); Union of
Russian Societies of St. Michael and St. George, Inc.
v. Koss, supra; Turner v. Robbins et al., 276 Pa. 319
(1923); Masters et al. v. Philadelphia Transportation
Company et al., 160 Pa. Superior Ct. 178 (1947);
Tomlinson v. Goldberg, 121 Pa. Superior Ct. 125
(1936); McClure v. Pennsylvania Railroad Company,
53 Pa. Superior Ct. 638 (1913).

"The law was equally clear prior to the passage of
the Uniform Act that the introduction of a release
established prima facie that the alleged joint tort-

feasor was a joint tortfeasor, and that at this point the burden of going forward with the evidence shifted back to plaintiff and plaintiff then had to prove that defendant was alone negligent or else the court would find for defendant as a matter of law: Mason v. Lavine, supra; Koller v. Penna. Railroad Co., supra; Masters et al. v. P.T.C. et al., supra; Smith v. Roydhouse, Arey & Co., supra; Peterson v. Wiggins, supra."

Mr. Justice McBRIDE, speaking for our Court in *Hilbert v. Roth,* 395 Pa. 270, 149 A. 2d 648, said (p. 272) : "It is clear that under the common law of Pennsylvania plaintiff could bring separate actions against several defendants for a joint trespass, obtain judgment against each and issue execution on the one he found most satisfactory; but once he received satisfaction, and either gave a release or satisfied the judgment of record, he could not thereafter execute or bring action against any other defendant. Fox v. Northern Liberties, 3 W. & S. 103; Seither v. Phila. Traction Co., 125 Pa. 397, 17 A. 338."

The Uniform Act drastically changed the law on this subject. Section 2(3) thereof provides: "(3) A joint tortfeasor who enters into a settlement with the injured person is not entitled to recover contribution from another joint tortfeasor whose liability to the injured person is not extinguished by the settlement.": Section 4 provides: "A release by the injured person of one joint tortfeasor, whether before or after judgment, does not discharge the other tortfeasors unless the release so provides, but reduces the claim against the other tortfeasors in the amount of the consideration paid for the release or in any amount or proportion by which the release provides that the total claim shall be reduced if greater than the consideration paid": Section 5 provides: "A release by the injured person of one joint tortfeasor does not relieve him from liability to make

contribution to another tortfeasor, unless the release is given before the right of the other tortfeasor to secure a money judgment for contribution has accrued and provides for a reduction to the extent of the pro rata share of the released tortfeasor of the injured person's damages recoverable against all the other tortfeasors".[1] *If applicable,* the provisions of this statute preclude recognition of the instant release as a bar to the action against Falcone and McBeth.

The accident, i.e., that which gave rise to Smith's cause of action, took place on June 4, 1950—thirteen months *prior* to the Uniform Act's effective date—and Smith's release of Fenner was given on May 28, 1952—eleven months *after* the effective date of the Act.

We agree thoroughly with Judge BARTHOLD's general discussion of the retroactive application of statutes in *Smith v. Falcone,* supra, (pp. 468, 469) wherein he stated: "It is a fundamental rule of statutory construction that statutes other than those affecting procedural matters must be construed prospectively, except where legislative intent that they shall act retroactively is so clear as to preclude all question as to the intention of the legislature: Farmers Nat. Bank & Trust Co. v. Berks County Real Estate Co. et al., 333 Pa. 390 (1939); Painter v. Baltimore & Ohio R. R. Co., 339 Pa. 271 (1940); Commonwealth ex rel. Greenawalt v. Greenawalt, 347 Pa. 510 (1943); Commonwealth v. Repplier Coal Co., 348 Pa. 372 (1944). This principle has been embodied in article IV, sec. 56, of the Statutory Construction Act of May 28, 1937, P.L. 1019, 46 PS §556, which provides: 'No law shall be construed to be retroactive unless clearly and manifestly so intended by the Legislature.' It is also funda-

---

[1] As to the effect of the Uniform Act: *Daugherty v. Hershberger,* 386 Pa. 367, 126 A. 2d 730; *Davis v. Miller,* 385 Pa. 348, 123 A. 2d 422.

mental that: 'Retrospective laws may be supported when they impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted': Barnesboro Borough v. Speice, 40 Pa. Superior Ct. 609, 612.''

On June 4, 1950—the date of this accident—a cause of action[2] arose against all three appellees. Any one or all three appellees might have been liable for all of Smith's damages. As the law stood at the time of the happening of the accident *if* any one of the three appellees had entered into a settlement of Smith's claim against that particular appellee and *if* Smith had given a release to such appellee, the other two appellees would thereby have been released from any claim by Smith. The Uniform Act changed the effect of such release, if given, but it effected no change in

---

[2] In *U. S. v. Memphis Cotton Oil Co.*, 288 U. S. 62, 67, 77 L. ed. 619, Mr. Justice Cardozo stated: "A 'cause of action' may mean one thing for one purpose and something different for another. . . . At times and in certain contexts, it is identified with the infringement of a right or the violation of a duty. At other times and in other contexts, it is a concept of the law of remedies, the identity of the cause being then dependent on that of the form of action or the writ. Another aspect reveals it as something separate from writs and remedies, the group of operative facts out of which a grievance has developed." "There is no difficulty in defining the phrase 'cause of action'. It obviously means what this Court in Martin v. Pittsburgh Rys. Co., 227 Pa. 18, 75 A. 837, said it meant, to wit: 'The negligent act or acts which occasioned the injury.'": *Cox v. Wilkes-Barre Railway Corp.*, 334 Pa. 568, 570, 6 A. 2d 538, 539; *Openbrier et al. v. General Mills, Inc.*, 340 Pa. 167, 169, 16 A. 2d 379, 380. See also: *Shaffer's Estate*, 228 Pa. 36, 40, 76 A. 716, 717; *Alpha Claude Neon Corporation, for use v. Pennsylvania Distilling Company, Inc.*, 325 Pa. 140, 142, 188 A. 325, 826; *Philadelphia v. Heinel Motors, Inc.*, 346 Pa. 528, 530, 31 A. 2d 104, 105.

the cause of action nor did it increase what could have been the liability of any one or all appellees at the time the cause of action arose. None of the appellees had any vested right to be exonerated from liability at the time of securing of a release by one or the other appellees. The change effected by the Uniform Act did not disturb any substantive right of any of appellees.[3] When the instant release was executed the parties knew or should have known of the provisions of the Uniform Act. It was not within the power of either Falcone or McBeth to prevent Fenner from securing or Smith tendering this release, nor did this release increase the measure of liability of either Falcone or McBeth. The Act clearly is applicable in the present situation.

In view of the conclusion reached in the appeal in the personal injury action it is unnecessary to dwell at length on the merits of the appeal in the equity action. Suffice it to say that the court below very properly upheld the preliminary objections and dismissed Smith's complaint.

The appeal in the personal injury action must be sustained and the appeal in the equity action dismissed.

The jury, by its special verdict, found that the legal cause of this accident was the *joint* negligence of Falcone, McBeth and Fenner. Under the provisions of the Uniform Act and the terms of the release, Smith can recover from Falcone and McBeth their joint pro rata share of the verdict, i.e., $73,888.78 and costs. Neither Falcone nor McBeth have any right of contri-

---

[3] *Deuscher v. Cammerano, et al.,* 256 N. Y. 328, 176 N.E. 412; *Halifax Chick Express Co. v. Young* (Del.), 137 A. 2d 743. Cf: *Keller Crescent Printing etc. Co. v. Rosen et al.,* 135 F. Supp. 22, 24; *Commercial Casualty Insurance Co. v. Leonard* (Ark.), 196 SW 2d 919; *Kansas City Railway Company v. McDaniel,* 131 F. 2d 89.

bution against Fenner whose liability has been settled by the release given by Smith.[4]

In Appeal No. 36 January Term 1959 the decree is affirmed. In Appeal No. 37 January Term 1959 judgment is reversed and judgment entered on the verdict in favor of Smith and against Falcone and McBeth for $73,888.78 and in favor of Smith and against Fenner for $36,944.39.[5]

---

[4] *Davis v. Miller*, 385 Pa. 348, 123 A. 2d 422.

[5] The latter judgment is to be marked satisfied by reason of the satisfaction thereof through the medium of the release given by Smith to Fenner.