## Augustine v. Sokol

*Robert F. Morris,* for plaintiff.
*David Federman,* for defendants J. H. Sokol and Javier Reluz.

*Medford J. Brown, III,* for defendants Robert E. Carlson and Joseph Quill. ·

*John Warner,* for defendant Surgical Clinic.

BRODY, *J.,* September 11, 1985—This memorandum opinion is written in conjunction with this court's order sur the motion for summary judgment of defendants Robert E. Carlson, M.D., and Joseph R. Quill, M.D.

A brief discussion of background is necessary. This action was commenced by plaintiffs in August of 1982, seeking recovery for personal injuries which allegedly resulted from negligent medical treatment provided by defendants. In January of 1984, plaintiffs executed two releases, one in favor of Doctors Sokol and Reluz in exchange for their payment of $35,000, and a second in favor of Montgomery Hospital and Surgical Clinic in exchange for payment of $7,500.

Defendant doctors Carlson and Quill now claim that the release in favor of defendant Montgomery Hospital and Surgical Clinic also works to release the individual doctors from any and all liability to the plaintiff.[1] They cite to language in the release which specifically describes the liability of Montgomery Hospital as vicarious liability for the acts of the individual doctors, as well as to traditional joint-tortfeasor language in the release that states that the release operates to satisfy plaintiffs' claims against defendant doctors to the extent of the relative pro rata share of the hospital's liability, or the

---

1. It is unclear from the record before us whether these defendant doctors are indeed employees or agents of Montgomery Hospital. Certainly, if they are not, the release of the hospital would have no effect on their own liability. However, this issue has not been raised by the parties and will not be considered by this court.

share of liability of the hospital under the Comparative Negligence Act.

It is this court's determination, after oral argument and consideration of the briefs, that the release in favor of Montgomery Hospital does not work as a release in favor of defendant doctors, that defendant doctors may be found liable to plaintiff despite the release of the hospital, but that any recovery against defendant doctors must be reduced by the amount recovered from Montgomery Hospital, as provided in the release.

## DISCUSSION

We note initially that the appellate courts of Pennsylvania have not considered the issue of whether the release of a hospital employer does or does not work as a release of a doctor/employee.[2] We have therefore examined the issue fully as one of first impression.

Traditionally, the common law of Pennsylvania provided that the release of one joint tortfeasor worked as a release of all. See Hilbert v. Roth, 395 Pa. 270, 149 A.2d 648 (1959). In 1951, Pennsylvania altered this rule through the adoption of the Uniform Contribution Among Tortfeasors Act, 42

---

2. For discussion of this issue in other jurisdictions, see Blackshear v. Clark, 391 A.2d 747 (Del. Supr. 1978), (release of employer hospital did not discharge employee doctor); McFadden v. Turner, 159 N.J. Super. 360, 388 A.2d 244 (1978) (release of employer hospital did not bar suit against employee nurses). See also the discussions of common pleas courts of this Commonwealth, Litz v. McGrath, 16, D.&C.3d 239 (1980) (release of employee works as a discharge of employer); Largeant v. Means, 121 P.L.J. 324 (1973) (release of employer works as a release of employee). See also 92 A.L.R. 2d at 537.

Pa.C.S. §§8321-27, which provides that the release by an injured party of one jointly or severally liable does not operate as a release of others jointly or severally liable unless the release expressly so provides. See 42 Pa.C.S. §8326. If the act were found to apply to the case at bar, then, the release of Montgomery Hospital would not, pursuant to its terms, work as a release of the individual doctors. See release of Montgomery Hospital, dated January 6, 1984 and annexed to this memorandum.

Pursuant to Pennsylvania law, however, the fact situation here does not present a joint-tortfeasor relationship. As stated by the Pennsylvania Supreme Court in explaining that the employer/employee relationship is not one of joint liability: ". . . (T)he *only* liability with which the (employer) is chargeable . . . is that which arises out of the master-servant relation. Where that relation exists the law imputes to the master the negligence of the servant, and the doctrine of respondeat superior applies." Betcher v. McChesney, 255 Pa. 394, 100 Atl. 124 (1917).

The respondeat superior relationship was explained further by the Superior Court in Parker v. Rodgers, 125 Pa. Super. 48, 189 Atl. 693 (1937). There, it was stated that the employer, ". . . was *only* liable as the master of her servant and driver . . . was not alleged that she was personally and directly guilty of any trespass or was responsible by reason of anything which she personally did or omitted to do. Her responsibility even to the plaintiff did not arise from any act which was on her part morally wrong, but her liability was based on a legal principle that has become a part of the positive law of the Commonwealth that the negligence of a servant acting within the scope of his employment is imputed to the master." Parker v. Rodgers, Id. at

52-53, 189 Atl. at 695-96, as quoted in Jones v. Harrisburg Polyclinic Hospital, 496 Pa. 465, 437 A.2d 1134, 1141-42 (1981). (Emphasis added.)

Thus, Montgomery Hospital is not liable in this case for any negligence on its own part, but rather solely through the legal theory that any negligence on the part of an employee is imputed to the employer. The Uniform Contribution Among Tortfeasors Act, therefore, has no applicability to the case at bar; and we must look to the common law to discern the effect of the Hospital's release on defendant doctors.

These doctors point to the case of Thompson v. Fox, 326 Pa. 209, 192 Atl. 107 (1937), in support of their position that even in situations where the Uniform Contribution Among Tortfeasors Act does not apply, a release of one party liable under any principle for damages to an injured party releases all parties who might be liable. In that case, plaintiff was injured in an automobile accident and later treated by a physician for his injuries. Plaintiff released the driver of the automobile "of and from all, and all manner of, actions and causes of action, claims and demands whatsoever . . . , especially arising out of an accident to me. . . ." Subsequently, plaintiff filed suit, against the treating physician, who claimed that the release of the car's driver worked to release him.

The Supreme Court held that since a recovery against the automobile's driver would have included damages caused by negligent care of a physician, the release of the driver would also release the physician, essentially they were joint tortfeasors of a successive variety. The court noted that:

"[F]or the same injury, however, an injured party can have but one satisfaction and the receipt of such satisfaction, either as payment of a judgment recovered or consideration for a release executed by

him, from a person liable for such injury, necessarily works a release of all others liable for the same injury and prevents any further proceeding against them . . . this is true even though it was intended, or the release expressly stipulated, that the other wrongdoer should not thereby be released . . . nor is it material whether the tortfeasors involved committed a joint tort or concurrent or successive torts, because the principle involved is that the injured party is given a legal remedy only to obtain compensation for the damage done to him, and when that compensation has been received from any of the wrongdoers, his right to further remedy is at an end. Of course, if a tortfeasor is liable only for a part of the damage, and another tortfeasor only for another part, . . . a release of one does not release the other; but where both are liable for the same damage, no matter upon what theory their respective liabilities are predicated, the rule applies. Since plaintiff, by settling with (the driver), was compensated for all injuries, both those originally and those ultimately arising out of the accident, . . . he can not obtain from defendant a second satisfaction of the same damage." Id at 212-213, 192 Atl. at 110.

The case at bar is distinguishable from Thompson v. Fox in several additional respects. Initially, we note that the court there made a finding that plaintiff had, pursuant to the release signed, received full satisfaction of the damages he suffered; pursuant to the release plaintiff "was compensated for *all* injuries." Thompson, Id. at 213, 192 Atl. 110. In the instant case, there is no allegation or indication that plaintiff has been fully compensated for his injuries. This case is perhaps more analogous to McClure v. Pennsylvania Railroad Company, 53 Pa. Super. 638 (1913). There, plaintiff was injured while in the course of his employment by the negligence of a

third party. He entered a release with his employer; the defendant railroad then sought to escape liability premised on this release between the employer and employee. The Superior Court held that the release was not a bar to suit against the railroad, noting that ". . . the amount of money received by him was so trifling, compared with the injury he sustained, that he could plausibly urge, even as against (the employer), that he had not received satisfaction from anybody and that he had not knowingly and intentionally undertaken to release anyone whom he believed to be liable for the injury he had sustained.".

Likewise here, there is no indication that the amount recovered from the hospital is a "satisfaction" of plaintiff's claim against the alleged tortfeasors, defendant doctors. We note that the principle behind Thompson v. Fox, that is, that plaintiff is entitled to only one satisfaction of his claims for damages, is best enforced by a reduction of any amount recovered by plaintiffs against the doctors by the amount received from the hospital (see discussion, infra). Here, however, unlike in Thompson, it does not appear from the record that plaintiff has been "compensated for all injuries"; plaintiff is not in the instant suit seeking "from defendant a second satisfaction of the same damage." Thompson, Id. at 213, 192 Atl. at 110. Plaintiff is entitled to seek full satisfaction of his injuries against any alleged tortfeasors.

A second distinction between Thompson v. Fox and the case at bar is that the Thompson court was discussing the issue of releases of individual *wrongdoers*. The entire discussion in Thompson, Id. at 212-13, 192 Atl. at 107, see quotation above, is premised on the fact that two tortfeasors, whether joint, concurrent, or successive, are involved. We

have already concluded that the doctrine of respondeat superior is not one of joint, concurrent or successive tortfeasorship between master and servant, but is solely a legal theory which thrusts liability on the master for negligence of his servant. Since respondeat superior does not involve multiple tortfeasors in some chain of liability, the statement of Thompson v. Fox, Id. at 209, 192 Atl. at 107, is inapplicable to the case at bar.

Subsequent to Thompson v. Fox, the Pennsylvania courts have noted that in order for a release of one person to act as a release of all, the parties must have been bound in some community of fault. In Wilbert v. Pittsburgh Consolidated Coal Company, 385 Pa. 149, 122 A.2d 406 (1956), the Supreme Court stated: ". . . in order that a release of one person from liability may bar an action against another for the same injury, the two must have been jointly liable." See also Smith v. Fenner, 399 Pa. 633, 161 A.2d 150 (1960); Koller v. Pennsylvania Railroad Company, 351 Pa. 60, 40 A.2d 89 (1944); Union of Russian Societies v. Koss, 348 Pa. 574, 36 A.2d 433 (1944).

None of these cases involve the master/servant relationship, however,[3] and all go on to conclude that a release of one not legally liable to the injured

---

3. These cases involve non-negligent parties who nonetheless paid consideration to an injured party in return for a release (Wilbert v. Pittsburgh Consolidated Coal Co., 385 Pa. at 149, 122 A.2d at 406; Koller v. Pennsylvania Railroad Company, 351 Pa. at 60, 40 A.2d at 89); or totally separate, independent acts of negligence (Union of Russian Societies v. Koss, 348 Pa. at 574, 36 A.2d at 433). In Smith v. Fenner, 399 Pa. at 633, 161 A.2d at 150, a "community of liability" was found to exist, and the Uniform Contribution Among Tortfeasors Act was held applicable.

party does not work as a release of any tortfeasor. See Smith v. Fenner, 399 Pa. at 638, 161 A.2d at 153, "If there was no community of fault there was no joint tort; hence a release of one not shown liable would not release a tortfeasor"; Wilbert v. Pittsburgh Consolidated Coal Company, 385 Pa. at 151, 122 A.2d at 407, ". . . a release of one who is not legally liable for an injury to another does not operate to release the culpable tortfeasor:" Koller v. Pennsylvania Railroad Company, 351 Pa. at 63, 40 A.2d at 91, ". . . a release of one not shown to be liable does not release a tortfeasor." Cf. Brown v. City of Pittsburgh, 409 Pa. 356, 185 A.2d 325.

This emphasizes a dichotomy in the law, with one rule as to releases of multiple tortfeasors, and a second rule as to releases between tortfeasors, injured parties and those parties "not legally liable." Certainly it cannot be argued that a master is "not legally liable" for the acts of his servant, and yet the parties are *not* multiple tortfeasors.

We note, however, that the end result under both of these theories pursuant to the law of Pennsylvania *today* would be the same. Under the Uniform Contribution Among Tortfeasors Act, a release of one multiple tortfeasor would not bar suit against any other alleged tortfeasors unless the release expressly so provided, thus abrogating the rule of Thompson v. Fox, 326 Pa. at 209, 192 Atl. at 107. Likewise, where there is no "community of fault," a release of one "not legally liable" would not bar suit against an alleged tortfeasor.

That the liability imposed on a master by the doctrine of respondeat superior fits neatly into neither category does not call for a different result. Thus, as would be the case among multiple tortfeasors, or if no community of fault existed because of the non-liability of one party, it is our conclusion that the

release of the master does not bar suit against the allegedly negligent employee.

This conclusion is supported by important policy considerations. It was recognized by the drafters of the Uniform Contribution Among Tortfeasors Act that "injustice often result(ed) under the common law." Commissioner's Prefatory Note, Uniform Laws Annotated, Volume 12, p. 59. The act was enacted in Pennsylvania in order to avoid such injustices. Likewise here, to permit defendant doctors to escape any liability they may have due to a release to which they are not party and to disallow plaintiff any recovery from these doctors despite the fact that such recovery was clearly intended by the release, would work an injustice in this case. Our conclusion avoids this injustice in keeping with the policy concerns evidenced by the Uniform Contribution Among Tortfeasors Act.

Additionally, such a rule adheres to traditional contract principles that a contract should be read according to its terms, and interpreted to effectuate the intention of the parties. Cf. Metzger v. Clifford Realty Corp., 327 Pa. Super. 377, 476 A.2d 1 (1984). Certainly, the release in this case makes the parties' intent as to the effect of the release upon the liability of defendant doctors perfectly clear; it expressly states that the release "forever discharge(s) the said Montgomery Hospital and Surgical Clinic, its agents, servants, workmen and employees, *excluding* . . . Robert E. Carlson, M.D., and Joseph R. Quill, M.D." Release, p.1. (Emphasis added.)

This intepretation of the release is also in keeping with the law regarding third-party beneficiaires, who cannot seek recovery on a contract to which they were not a party unless they were an *intended* beneficiary, see Guy v. Liederbach, 501 Pa. 47, 459 A.2d 744 (1983). Here, to permit Doctors Carlson

and Quill to benefit from the contract between Montgomery Hospital and plaintiffs, when these parties expressly intended that the doctors would *not* so benefit, would work an unjust enrichment of these defendants.

Thus, our conclusion is that the release by plaintiffs of Montgomery Hospital does not bar an action against these doctor defendants. We return now to the rule of law that a party can recover only once for any injury. Thompson v. Fox, supra; Betcher v. McChesney, supra.

This rule requires that should a verdict be entered against defendant doctors, the amount of damages recoverable from them must be reduced by the amount paid to plaintiff by the hospital. In Brown v. Pittsburgh, 409 Pa. at 356, 185 A.2d at 325, plaintiff was injured when she slipped on a sidewalk in front of a church in the city of Pittsburgh. The church was immune to suit in light of its status as a charitable institution; nonetheless, it paid plaintiff $2000 in return for a release in its favor. The Pennsylvania Supreme Court held that in view of the rule of law (noted supra) that a release given to one not legally liable (as the church was because of its immunity) does not bar an action against a tortfeasor, suit against the City of Pittsburgh could proceed despite the release in favor of the church. However, the court pointed out that: "The sum received (from the church) may not be recovered again. Therefore, if any judgment is recovered against the city. . credit must be given for the sum already paid. The city's liability, if any, must be limited to the amount of the judgment that is in excess of the sum that has already been paid." Brown, 409 Pa. at 363-64, 85 A.2d at 325.

Likewise in this case, the liability of defendant doctors, if any, must be limited to the amount of the

judgment that is in excess of the amount that has already been paid by Montgomery Hospital.

Therefore, in light of the foregoing discussion, the court enters the following

ORDER SUR MOTION FOR SUMMARY
JUDGMENT OF DEFENDANTS
JOSEPH R. QUILL, M.D.
AND ROBERT E. CARLSON, M.D.

And now, this September 17, 1984, after oral argument and consideration of briefs, and pursuant to the request of J. Medford Brown, III, Esq., counsel for defendants Carlson and Quill, in light of this court's interim order of May 31, 1985, the motion of Robert E. Carlson, M.D., and Joseph R. Quill, M.D., for summary judgment is hereby dismissed.