## Creighan *v.* Pittsburgh, Appellant.

570

Argued March 22, 1957. Before Jones, C. J., Bell, Chidsey, Musmanno, Arnold, Jones and Cohen, JJ.

reargument refused July 1, 1957.

*George Shovall,* with him *J. Frank McKenna, Jr.,* for appellant.

*Thomas Lewis Jones,* with him *Dale Cleland,* for appellee.

Opinion by Mr. Justice Benjamin R. Jones, May 27, 1957:

Appellee, a salaried fireman, sued the City of Pittsburgh for disability benefits under the so-called "Heart and Lung Act."[1]

---

[1] Act of June 28, 1935, P. L. 477, as amended, 53 PS §327.

From May 11, 1937 until February 22, 1949, the appellee was employed by the City as a salaried fireman. In March 1949 appellee was found to be suffering from tuberculosis of the respiratory system: from April 14, 1949 until April 30, 1950, he was a patient at a sanitarium; from April 30, 1950 until October 1951, he was an out-patient and then returned to the sanatarium where he remained until September 1953. On November 24, 1953, appellee was certified by medical authorities as being able to return to his duties and, although desirous of working, he was not reinstated. On June 21, 1954, he was found permanently incapacitated because of tuberculosis of the respiratory system and since that time has been a sanitarium patient.

On April 19, 1950, appellee signed and delivered a letter addressed to the Chief of the Bureau of Fire in which he purported to tender his resignation, effective forthwith, but which was tendered on the understanding that he would be reinstated if and when his health was recovered. This letter was accepted with the written understanding that appellee would be reinstated when his health improved to an acceptable point. Appellant takes the position that this letter removed appellee from the status of a fireman and therefore made him ineligible to institute this lawsuit.

The appellee claims recovery from appellant of two separate items: (1) his full salary during the period of his temporary incapacity from September 27, 1951 (the effective date of the Act) until June 21, 1954 (the date of permanent incapacity) and (2) "compensation" for permanent incapacity from June 21, 1954 to the date of suit.

At trial, the jury made specific findings of fact: (1) that on September 27, 1951, the appellee was a fireman, i. e. that he had not resigned; (2) that appellee was suffering from tuberculosis of the respiratory system;

(3) that the tuberculosis was contracted or incurred after four years of continuous service as a fireman; (4) that the tuberculosis was caused by extreme overexertion in times of stress or danger and/or by exposure to heat, fumes or gases arising directly out of his employment as a fireman; (5) that appellee was totally disabled; (6) that appellee became permanently disabled on June 21, 1954. A verdict of $16,165.77 was recorded, $13,648.29 for the period of temporary incapacity and $2,517.48 for the period of permanent incapacity. From a judgment entered on this verdict, the City appealed.

This appeal poses two principal questions: (1) does the "Heart and Lung Act" encompass a claim for disability arising from tuberculosis which occurred over two years prior to the Act?; (2) did appellee resign as a fireman in April 1950 so that he had no status to present a claim under the Act?

The lower court considered that both these questions were res judicata. When the appellee filed his assumpsit complaint, the City filed preliminary objections raising both these questions. After oral argument, the court below dismissed the preliminary objections and granted leave to the City to file an answer. The City took no appeal from the dismissal of the preliminary objections. The court below, after the trial on the merits, considered both questions res judicata. With that conclusion we disagree. An appeal lies only from a definitive action of a lower court such as a judgment, a decree or a final order, unless an appeal is specifically allowed by statute: *Coleman, Admr., et al. v. Huffman et al.*, 348 Pa. 580, 36 A. 2d 724; *Stadler, Admr. v. Mt. Oliver Borough*, 373 Pa. 316, 95 A. 2d 776; *Sullivan v. Philadelphia*, 378 Pa. 648, 107 A. 2d 854; 9 Standard Penna. Practice §20. The order overruling the City's preliminary objections was not a final order; it was interlocutory, hence, not appealable: *Stamper v. Kogel-*

*schatz*, 289 Pa. 94, 137 A. 127; *Deardorff, Admr. v. Continental Life Insurance Co.*, 297 Pa. 289, 146 A. 816; *Grosso v. Englert*, 381 Pa. 351, 113 A. 2d 250; *Marnet Hosiery Mill, Inc. v. Greco*, 171 Pa. Superior Ct. 168, 90 A. 2d 381. The doctrine of res judicata does not apply in the absence of a final judgment or decree and, in view of the interlocutory nature of the Court's order, neither question was res judicata: *O'Brien et al. v. O'Brien*, 362 Pa. 66, 66 A. 2d 309; *Ahrens v. Goldstein*, 376 Pa. 114, 102 A. 2d 164.

The "Heart and Lung Act" contains no effective date and, therefore, since it was "enacted finally after the first day of September of the year of the regular session", it became effective immediately upon final enactment, that is, on September 27, 1951: Statutory Construction Act of May 28, 1937, P. L. 1019, Art. I, §4, as amended, 46 PS §504.

Appellee became ill in March 1949, over two years prior to the effective date of the Act under which he claims. The City takes the position that the Act was prospective only in its operation and appellee could not be included within its terms. The Statutory Construction Act of 1937 [2] provides: "No law shall be construed to be retroactive unless clearly and manifestly so intended." It has been stated that this section "raises a presumption against a construction which would give a retroactive effect to a statute, to be overcome only by the clear and manifest intent of the legislature that the law should have such an effect." [3] Not only must the legislative intent be clear and manifest, but it must also appear that a retroactive construction will not destroy vested rights or impair the obligations of a contract:

---

[2] This section of the Act (Act of May 28, 1937, P. L. 1019, Art. IV, §56, 46 PS §556) restated the Pennsylvania law at that time.

[3] Comment on the Statutory Construction Act by W. F. Schultz, Jr., and David Stahl, 46 PS p. 31.

*Anderson v. Sunray Electric, Inc.*, 173 Pa. Superior Ct. 566, 569, 98 A. 2d 374. An examination of the Act does not disclose any clear or manifest intent that it shall be construed retroactively.

*The appellee is not claiming any benefits prior to the effective date of the Act but only thereafter.* A recognition of appellee's claim does not require that we place a retroactive construction on the Act, but simply that we apply the Act to a condition which existed on the date when the Act became effective even though such condition resulted from events which occurred prior to its effective date. In *Burger Unemployment Compensation Case,* 168 Pa. Superior Ct. 89, 77 A. 2d 737, the claimant became unemployed as the result of a strike and under the applicable unemployment compensation law was not entitled to any benefits; this strike was converted into a "lock out" by the employer and the "lock out" occurred before and continued after the effective date of the Act of May 23, 1949, P. L. 1738, which allowed benefits due to stoppage of work caused by a "lock out". The Superior Court, permitting the claimant to receive benefits beginning with the effective date of the Act, stated: "This ruling does not contravene the legislative mandate against retroactive construction of statutes. Statutory Construction Act of May 28, 1937, P. L. 1019, §56, 46 PS §556. Where, as here, no vested right or contractual obligation is involved, an act is not retroactively construed when applied to a condition existing on its effective date even though the condition results from events which occurred prior to that date. 'A statute is not retrospective . . . because a part of the requisites for its action is drawn from a time antecedent to its passing': Endlich, Interpretation of Statutes, §280. 'However, a statute is not regarded as operating retroactively because of the mere fact that it relates to antecedent events, or draws upon

antecedent facts for its operation': 50 Am. Jur. Statutes, §476. See also 59 C. J., Statutes, §690. Rejecting a contention that the Married Women's Act of 1848 was retroactively construed when applied to women or to the property of women who were covert on the date of its enactment, Mr. Justice ROGERS said, tersely and pointedly: 'If the property be hers, when the act passed, there is an end to the objection, that it gives the act a retrospective effect, so as to interfere with vested rights': Goodyear v. Rumbaugh, 13 Pa. 480, 481. The books are replete with cases expounding and applying the principle." See also: *Pope v. Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Co.,* 176 Pa. Superior Ct. 276, 278, 107 A. 2d 191. In *Philadelphia, to use, v. Phillips,* 179 Pa. Superior Ct. 87, 95, 96, 116 A. 2d 243, it was stated: " 'A statute is not made retroactive merely because it draws on antecedent facts for its operation.' Cox v. Hart, 260 U. S. 427, 43 S. Ct. 154 (1922) ; Malick's Petition, 137 Pa. Superior Ct. 139, 145, 8 A. 2d 494 (1939) ; Pope v. Pennsylvania Thresher. and Farm. Mut. Cas. I., 176 Pa. Superior Ct. 276, 107 A. 2d 191 (1954). See also Wagner v. Leser, 239 U. S. 207, 36 S. Ct. 66 (1915)." An inclusion of appellee within the orbit of the operation of this statute does not require a retroactive construction thereof.

An examination of the statute indicates that the Legislature intended compensation to be paid to all firemen who fall within the statutorily stated requirements: (1) that the fireman has tuberculosis of the respiratory system; (2) that the tuberculosis must have been contracted or incurred after four years of continuous service as a fireman; (3) that the tuberculosis must have been caused by extreme overexertion in times of stress or danger or by exposure to heat, smoke, fumes or gases; (4) that such extreme overexertion or expo-

sure must have arisen directly out of the employment as firemen. Appellee meets all these stated requirements. Yet, if appellant's contention is correct, appellee has been excluded by the Legislature because his condition was *discovered* prior to the effective date of the Act. The effect of such a distinction is obvious: it excludes a fireman whose tuberculosis is discovered on September 27, 1951, just before the Governor signed the Act, but includes a fireman whose tuberculosis was discovered on the same date after the Governor signed the Act. Particularly unfair and unsound is this distinction in view of the extreme difficulty, if not actual impossibility, of pinpointing with any degree of accuracy the actual time of the onset of tuberculosis. If all the stated requirements are met, the time of discovery of the onset of the disease should not control liability for compensation.

Appellant further contends that the appellee had resigned from the fire department and had thus removed himself from the group of employees covered by the Act. This contention requires an examination of appellee's letter of April 19th, together with appellant's acceptance thereof. If this letter had contained only the first paragraph, it would clearly constitute a resignation as a fireman and a complete severance of the relationship between appellee and the City. However, the second paragraph of the letter and the written acceptance by the City officials indicates that any severance of the relationship between appellee and the City was only for such period of time as appellee continued in ill health. Regardless of the authority of the Chief of the Fire Bureau or the Director of Public Safety to qualify the acceptance of this letter, the fact remains that the acceptance itself raises considerable doubt and ambiguity whether it was the intent of the parties that appellee be considered in a resigned status or on a

sick leave basis. The court below very properly concluded that the writing of April 19, 1950, was ambiguous and to resolve the ambiguity admitted parol evidence which was properly submitted for the consideration of the jury. As former Chief Justice HORACE STERN, speaking for this court in *Morgan v. Phillips*, 385 Pa. 9, 14, 122 A. 2d 73, said: ". . . it is well established that, where a written instrument is ambiguous, either party may produce oral evidence to resolve the ambiguity, such evidence being admitted, not to add to or detract from the writing, but merely to ascertain the meaning of the parties. The authorities so holding are legion."

The jury, under proper instructions from the court, specifically resolved this ambiguity in appellee's favor and found as a fact that appellee was on September 27, 1951, a fireman of the City of Pittsburgh. An examination of the record indicates that this finding was supported by sufficient evidence; under the circumstances we conclude that the appellee was in the status of a fireman at the time of the institution of this litigation.

However, appellee claimed compensation not only for a period of time during which he was temporarily disabled, but also for a period of time during which he was permanently disabled. In *Kurtz v. Erie*, 389 Pa. 557, 133 A. 172, we have recently held that a fireman who is permanently incapacitated or disabled is not entitled to compensation under the "Heart and Lung Act", and, in accordance with that ruling, the appellee cannot recover from the City any compensation during the period of his permanent disability.

While it is true that we have the right to modify or certify a judgment of the court below and to enter such judgment as we deem proper and just without returning the record for amendment or modification to

the court below,[4] yet it is equally true that we have been loath to exercise such power: *Brown v. Paxton*, 332 Pa. 260, 2 A. 2d 729; *Meholiff v. River Transit Co.*, 342 Pa. 394, 20 A. 2d 762. It is only in exceptional circumstances that we exercise our statutory authority to modify a judgment and enter such judgment as we deem proper and just.

The court below, with the consent of the parties, submitted to the jury seven specific questions of fact for their determination. The jury answered all these questions in appellee's favor and the answers to the questions constituted the verdict. Appellee then submitted to the court a computation of figures showing that which he claimed during the period of temporary disability ($13,648.29) and that which he claimed during the period of permanent disability ($2,517.48). On the basis of that computation and supported by the specific finding of the jury, the court entered a judgment for the combined figures or a judgment of $16,-165.77.

It is clear, therefore, just what portion of the judgment covers the period of permanent disability and just what portion of the judgment covers the period of temporary disability. To remand this case to the court below and direct another trial would cause delay and perhaps a deprivation of justice, especially in view of appellee's physical condition. Under the present circumstances, we feel that it is eminently just and proper that we direct the entry of judgment without returning the record to the court below.

The judgment in the court below is modified and a judgment is directed to be entered in favor of the appellee and against the City of Pittsburgh in the amount of $13,648.29. The costs are to be paid by appellant.

----

[4] Act of May 20, 1891, P. L. 101, §2, 12 PS §1164; *Downes v. Hodin*, 377 Pa. 208, 104 A. 2d 495; *Clewell v. Pummer*, 388 Pa. 592, 131 A. 2d 375.