## The Pennsylvania Insurance Guaranty Association v. Leonard

*James McCabe*, for petitioner.
*Albert Fein*, for respondent.

DiNUBILE, *J.*, March 20, 1975—

### STATEMENT OF FACTS

1. Petitioner, The Pennsylvania Insurance Guaranty Association, is an unincorporated association whose membership consists of every insurance company authorized to write property and casualty insurance within the State of Pennsylvania.

2. The petitioner association was created by the mandate of The Pennsylvania Insurance Guaranty Association Act of November 25, 1970, P.L. 716

(No. 232), 40 P.S. §§1701.101, et seq., which makes it compulsory for insurance companies to become members of this association as a prerequisite to writing property and casualty insurance.

3. Respondent, Howard Leonard, is a citizen of Pennsylvania who has an unpaid claim against the Granite Mutual Insurance Company, an insolvent insurer.

The claim arose as a result of injuries sustained by respondent on October 20, 1966. An action in trespass was instituted in the Court of Common Pleas, March term, 1967, no. 4487, against Nathaniel Wiley, an assured of the Granite Mutual Life Insurance Company. The said insurance company defended the action and on March 7, 1974, a verdict was obtained in the sum of $6,500.

4. On June 17, 1974, the insurer issued a draft on the Philadelphia Fidelity Bank for the amount of the verdict and on June 25, 1974, it was deposited by respondent's counsel for collection.

5. On June 26, 1974, the insurer was declared insolvent by the Commonwealth and the draft was returned marked "account closed."

6. All the assets of the insolvent member, the Granite Mutual Insurance Company, have been taken over by the Insurance Commissioner as liquidator. This included any sum in the insurer's account with the Philadelphia Fidelity Bank as of June 26, 1974, the date of the insolvency. No sums from this account were ever received by the petitioner association.

7. The association is a general creditor for any payment which it makes for "covered claims."

8. Respondent would also be a general creditor if the "covered claims" do not include claims existing prior to the effective date of the act.

9. There is no expectation that any amounts will be received by general creditors nor can preferred creditors expect more than a fraction on their claims.

10. The association will be preferred creditor as to operating expenses.

11. The petitioner association has received other claims from claimants and policy owners antedating the effective date of the act which were asserted against insurers declared insolvent after the effective date of the act.

12. Petitioner has made no payments with respect to the claims of respondent or with respect to similar claims because of the uncertainty as to its obligations and duties.

## DISCUSSION

Although there is no objection to the court exercising jurisdiction under the Declaratory Judgments Act, nevertheless, before a court may entertain a petition, it must first determine if it has jurisdiction. The mere fact that the parties may be eager and cooperative in getting the conflict disposed of in court is not sufficient, in itself, to confer jurisdiction: Philadelphia Manufacturers Mutual Fire Insurance Company v. Rose, 364 Pa. 15, 70 A. 2d 316 (1950).

The Uniform Declaratory Judgments Act of June 18, 1923, P.L. 840, sec. 6, as amended, 12 P.S. §836, sets forth the basic requirements for jurisdiction.

There must be an actual controversy indicating inevitable litigation, and it must also appear that the declaratory judgment will serve to terminate the controversy: Friestad v. Travelers Indemnity Company, 452 Pa. 417, 306 A. 2d 295 (1973).

The court may exercise jurisdiction even though there may be a common-law remedy. However, if there is a statutory remedy available, the court cannot take jurisdiction: Friestad v. Travelers Indemnity Company, supra. Since there is no statutory remedy available in this matter, the court has jurisdiction.

The issue in this case is whether a claim arising prior to the effective date of the act is a "covered claim" within the meaning of the law when the insolvency of the insurer is not declared until a date subsequent to the effective date of the act.

The significant dates are October 20, 1966, the date the claim arose, and June 26, 1974, the date the insured was declared insolvent.

Petitioner contends that neither statutory context nor the policy consideration offer any support to a finding that "covered claims" include those antedating the effective date of the act. In other words, "covered claims" of insolvent insurers are limited to those subsequent to the effective date of the act.

The purpose of The Pennsylvania Insurance Guaranty Association Act is specifically expressed in section 1701.102, supra. Its function is to provide a mechanism for the payment of covered claims under certain policies to expedite payment of such claims and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer. The act, in addition, provides for the detection and prevention of insurer's insolvency.

The principal powers and duties of the association are provided in 40 P.S. 344 §1701.201 as follows:

"(i) Be obligated to make payment to the extent of the covered claims of an insolvent insurer exist-

ing prior to the determination of said insurer's insolvency, and covered claims arising within thirty days after the determination of insolvency, or before the policy expiration date if less than thirty days after such determination, or before the insured replaces the policy or causes its cancellation, if he does so within thirty days of such determination; but such obligation shall include only that amount of each covered claim which is in excess of one hundred dollars ($100), and is less than three hundred thousand dollars ($300,000). In no event shall the association be obligated on a covered claim in an amount in excess of the obligation of the insolvent insurer under the policy under which the claim arises.

"(ii) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties, and obligations of the insolvent insurer as if that insurer had not become insolvent."

A "covered claim" is defined in 40 P.S. 343 §1701.103.

"(5)(a) 'Covered claim' means an unpaid claim, including a claim for unearned premiums, which arises under a property and casualty insurance policy of an insolvent insurer and is:

"(i) The claim of a person who at the time of the insured event resulting in loss or liability was a resident of this Commonwealth, or

"(ii) A claim arising from an insured event resulting in loss or liability to property which was permanently situated in this Commonwealth.

"(b) A covered claim shall not include any amount due any insurer, reinsurer, insurance pool, or underwriting association, as a subrogation recovery or otherwise.

"(c) A covered claim shall not include any amount in excess of the applicable limits of the policy under which it arises."

A reading of the pertinent sections of the statute does not make it clear as to whether claims that antedated the act are "covered claims." Because of this, the court must look to certain external factors to resolve the issue.

The Pennsylvania Insurance Guaranty Association Act is a uniform law promulgated by the National Association of Insurance Commissioners and adopted by most States. According to the Statutory Construction Act of May 28, 1937, P.L. 1019, sec. 57, 46 P.S. §557, which provides that: "Laws uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them."

It is necessary to review the judicial construction of the legislation in our sister States concerning the interpretation of "covered claims." Three courts of last resort have been faced with this issue, Ohio, July 21, 1971, Louisiana, March 19, 1973, and Mississippi, December 3, 1973.

In Smith v. Ohio Valley Ins. Co., 27 Ohio St. 2d 268, 272 N.E. 2d 131, the Supreme Court of Ohio held such claims not payable, as not included within the reasonable meaning of the act's definition of "covered claim." The court seized upon what it conceived to be the grammatical analysis of the sentence defining covered claims. It held that the tense of four verbs in the definition of "covered claims" is uniformly in the present tense and, therefore, prospective. It further stated that had the legislative intention been otherwise, the past tense

"arose" and "was" would have been applicable and used.

In Louisiana Insurance Guaranty Association v. Guglielmo, 276 So. 2d 720 (1973), the court of appeals rejected the strict grammatical approach of the Ohio court and held, in part, at pages 725-26:

"We disagree with the reasoning in Smith v. Ohio Valley Insurance Company, above, which held in effect that the word 'arises' implies the present tense only. . . .

"We likewise find the phrase 'arises out of' as used in the definition of covered claims in this instance, relates not to verb tense or the time the claim arises, but rather to the source and nature of the claim. In this regard, we note that the last sentence of the definition of 'covered claim' specifically excludes claims of certain designated types without reference to past or future tense. Construed together, we deem these provisions indicative of legislative intent to categorize the class or nature of claims covered, and not to fix the time when claims shall arise as a condition precedent to their falling into the classification of covered claims. Further support for this conclusion is found in Section 1382 (1) (a), which recites:

" 'The Association shall be obligated to the extent of the covered claims existing prior to the determination of the insurer's insolvency. . . .' Thus, liability of the Association is not limited to claims arising after the effective date of the Act, but is extended to any claim antedating insolvency. To hold the contrary could lead to the absurd result that, in the case of an insurer being adjudged insolvent on September 2, 1970, only claims arising on that date would be deemed covered claims. This would not result in the liberal interpretation required by the

Act, but would place a most restrictive meaning on the statute contrary to its clear mandate.

"We hold the Act intends that the decreeing of an insurer insolvent after its effective date is the sole, operative factor upon which the Association's liability attaches. . . ."

The Supreme Court of Mississippi, confronted with the two contrasting opinions, held in Mississippi Insurance Guaranty Association v. Gandy, Commissioner of Insurance, 289, So. 2d 677 (1974) at page 682:

"We likewise find the phrase 'arises out of' as used in the definition of covered claims in this instance, relates not to verb tense or the time the claim arises but rather to the source and nature of the claim . . . the controlling factor is the insolvency of the insurance company after the effective date of the Act and not when the claims arose."

This court is in agreement with the reasoning of the Mississippi and Louisiana courts. The act covers claims which arose before the effective date of the act as long as the insurer did not become insolvent until after the effective date of the act.

Although this interpretation is not expressly stated in the act, it is strongly implied.

An application of the criteria set forth in the Statutory Construction Act, supra, illumines the meaning of "covered claims."

An examination of section 5 of the Act, 46 P.S. §551, which applies to legislative intent, reveals that the intent may be ascertained by considering the occasion and necessity for the law, the circumstances under which it was enacted, the mischief to be remedied and the object to be obtained.

The necessity and reason for the law is the protection of the public against financial loss to policy-

holders or claimants due to the insolvency of insurers. In order to achieve this result, the association was formed so that economic loss would be absorbed by the companies that would remain sound.

Section 58 of the Act, 46 P.S. §558, which deals with the rule of strict and liberal construction, compels a liberal construction of this law. This section enumerates the types of statutes that must be strictly construed and insurance statutes are not among them. However, this section does provide: "All other provisions of a law shall be liberally construed to effect their objects and to promote justice."

It is inconceivable that the legislature intended the limited interpretation that petitioner urges. If the legislative intent was to limit "covered claims" to only those stemming from occurrences between the effective date of the act and the declaration of insolvency, it is unbelievable that the legislature would fail to expressly declare such intention.

Moreover, it is noted that section 1701.102 of the Insurance Act, supra, paragraph 5b and 5c, expressly sets forth things that are not covered claims. No mention is made of claims antedating the act.

Although section 33 of the Statutory Construction Act, 46 P.S. §533, provides that:

"Words and phrases shall be construed according to rules of grammar and according to their common and approved usage."

To hold that "which arises under" covers claims antedating the passage of the act does not offend the rules of grammar. This is because the interpretation of the court is consonant with the intention of the legislature and with a liberal construction of the act. No mention is made of claims in the act. There-

fore, we find that the phrase "arises under" does not relate to the verb tense or the time the claims arise but, rather, it is directed to the source and nature of the claim.

Petitioner further contends that if a "covered claim" antedates the passage of the act, then it would be retroactive legislation, which section 56 of the Statutory Construction Act, 46 P.S. §556, prohibits, unless clearly and manifestly so intended by the legislature.

It has long been recognized in the Commonwealth that if a statute is to be made retroactive, not only must the legislative intent be clear and manifest but it must also appear that a retroactive construction will not destroy vested rights or impair the obligations of a contract: Creighan v. Pittsburgh, 389 Pa. 569, 132 A. 2d 867 (1957).

However well established, principles of law dictate that a statute is not rendered retroactive merely because it utilizes antecedent facts for its operation: United States v. Trans-Missouri Freight Association, 166 U.S. 290, 17 S. Ct. 540, 41 L. Ed. 1007 (1897); Cox v. Hart, 260 U.S. 427, 43 S. Ct. 157, 67 L. Ed. 332 (1922); Reynolds v. United States, 292 U.S. 443, 54 S. Ct. 800, 78 L. Ed. 1353 (1934).

In Trans-Missouri, supra, the Supreme Court of the United States decided that a retroactive effect is not applied to a statute making combinations in restraint of trade illegal just because the statute is applied after its passage to a continuation of a pre-existing contract.

Reynolds v. United States, supra, involved a veteran who sought to recover money deducted from his government pension for board furnished from 1911 until 1930. In 1926, Congress passed an act exempting veterans' pensions from deductions for

board furnished while a veteran was hospitalized in a government facility. The court rejected the government's position that to allow recovery for the value of board furnished before the effective date of the act would give the legislation a retroactive effect. The court espoused the doctrine that a statute is not rendered retroactive just because the facts upon which its subsequent application depend antedate the law's enactment.

A congressional act governing the rights of persons homesteading and possessing unsurveyed desert lands belonging to the Federal Government was involved in Cox v. Hart, supra. Although the legislation forbids entry of unsurveyed lands, it recognized the rights of possessors who had entered such land before the effective date of the act in issue. It was held that the act referred to individuals who maintained a certain status when the act became effective. The court further added that the act was not made retroactive merely because it drew upon certain antecedent facts for its applicability.

The same principle is followed by our courts. In Crieghan v. City of Pittsburgh, supra, a fireman sued the City of Pittsburgh for disability benefits under the Heart and Lung Act. The statute compensated firemen who were temporarily disabled from tuberculosis. Plaintiff became ill from tuberculosis over two years before the effective date of the act. The city maintained that the statute was prospective only in its operation and so plaintiff was not covered. The court, in holding defendant liable, stated: A statute is not regarded as operating retroactively because of the mere fact that it relates to antecedent events, or draws upon antecedent facts for its operation.

Therefore, the city was liable to a fireman who suffered from tuberculosis which occurred prior to the effective date of the act but which existed on the effective date.

See also Pope v. Pennsylvania Threshermen and Farmers' Mutual Casualty Insurance Co., 176 Pa. Superior Ct. 276, 278 (1954), In Philadelphia, to use, v. Phillips, 179 Pa. Superior Ct. 87, 95, 96, 116 A. 2d 243 (1955), it was stated that a statute is not made retroactive merely because it draws on antecedent facts for its operation.

Moreover, the Pennsylvania Insurance Guaranty Association Act doesn't impair any contractual obligation or disturb vested rights. The only contract involved is a contract of the insurers who become insolvent. A claimant undoubtedly has a right against an insurer which arises out of the contract. But this circumstance alone does not impose liability upon the association. However, it does represent a potential liability of the association which develops upon the determination of insolvency which must postdate November 25, 1970.

Upon the determination of insolvency, the association's statutory liability replaces the contractual obligation of the insolvent insurer.

For the foregoing reasons, the petition for a declaratory judgment is granted.

## DECREE

And now, March 20, 1975, the court declares that the Guaranty Association is liable for all "covered claims" of an insolvent insurer arising before or after the effective date of the act so long as insolvency of an insurer occurs after the effective date of the act.