## Boland v. Nationwide Mutual Insurance Co.

*Richard M. Serbin,* for plaintiff.
*John L. McIntyre,* for defendant.

CARPENTER, *J.,* January 11, 1991 — Plaintiff Nancy A. Boland instituted this action on July 2, 1990, asserting that defendant Nationwide Mutual

Insurance Company failed to pay certain first-party benefits (namely, income loss benefits) for injuries she sustained as a passenger in a two-car accident. In addition, plaintiff seeks punitive damages, interest, attorney fees and costs for the allegedly unreasonable refusal to pay. Defendant has filed preliminary objections in the nature of a motion to strike plaintiff's claim for punitive damages, the disposition of which is presently before this court. We are faced with two issues: (1) whether the statute authorizing punitive damages, 42 Pa.C.S. §8371, may be applied retroactively; and (2) whether a cause of action for defendant-insurer's alleged bad faith nevertheless accrued after the effective date of 42 Pa.C.S. §8371, so as to make retroactive operation unnecessary.

This statute is crucial to plaintiff's claim for punitive damages because before its passage, punitive damages were not available for an insurance company's bad-faith denial of a claim. *D'Ambrosio v. Pennsylvania National Mutual Casualty Insurance Company*, 494 Pa. 501, 431 A.2d 966 (1981); *Bleiberg v. Insurance Company of North America*, 50 D.&C. 3d 570 (1987). At that time, plaintiffs could only raise a claim for punitive damages in such cases by asserting the common-law tort of fraud and deceit. *Delahanty v. First Pennsylvania Bank, N.A.*, 318 Pa. Super. 90, 464 A.2d 1243 (1983); *Bleiberg v. Insurance Company of North America, supra.* The rationale for these holdings rested largely upon the principle that punitive damages could not be awarded for breach of contract, even if the breaching party had acted in bad faith. *Daniel Adams Associates Inc. v. Rimbach Publishing Inc.*, 287 Pa. Super. 74, 429 A.2d 726 (1981); *Raab v. Keystone Insurance Co.*, 271 Pa. Super. 185, 412 A.2d 638 (1980), appeal dismissed, 437 A.2d 941 (1981). Also,

the *D'Ambrosio* court determined that the legislatively created regulatory scheme appearing in the Unfair Insurance Practices Act[1] provided sufficient deterrence to bad-faith conduct on the part of insurance companies. *D'Ambrosio, supra.*

Such was the state of affairs for nearly nine years after the *D'Ambrosio* decision until the legislature's enactment of 42 Pa.C.S. §8371, which provides in its entirety:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

"(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus three percent.

"(2) *Award punitive damages against the insurer.*

"(3) Assess court costs and attorney fees against the insurer." Act of February 7, 1990, no. 6. (emphasis supplied)

In a catchall provision, section 32(8) of Act 6 ascribes an effective date of July 1, 1990 to section 8371. Since the negotiations between plaintiff and defendant took place before this date, defendant challenges the bad-faith claim on the basis that section 8371 may not be applied retroactively. We believe defendant is correct. Absent clear language to the contrary, statutes are to be construed to operate prospectively only. *Gehris v. Commonwealth, Dept. of Transportation,* 471 Pa. 210, 369 A.2d 1271 (1977); Statutory Construction Act of 1972, 1 Pa.C.S. §1926. The terms of a statute allowing for retroactivity must be so clear as to preclude all questions as to the intention of the

---

1. Act of July 22, 1974, P.L. 589, 40 P.S. §1171.1 et seq. (Supp. 1990).

legislature. *Smith v. Fenner,* 399 Pa. 633, 161 A.2d 150 (1960); *Farmers National Bank & Trust Co. v. Berks County Real Estate Co.,* 333 Pa. 390, 5 A.2d 94 (1939). Indeed, retroactive legislation is so offensive to the Anglo-Saxon sense of justice that it is never favored. *Appeal of Sawdey,* 369 Pa. 19, 85 A.2d 28 (1951). Where the language of the statute is general and might be given both retroactive and prospective operation, it will be held to be prospective only. *Krenzelak v. Krenzelak,* 503 Pa. 373, 469 A.2d 987 (1983).

There is no language in section 8371 which would indicate an intent for retroactive application. Instead, the language explicitly indicates that this law was to take effect nearly six months after passage. Act 6, §32(8). Thus, section 8371 provides for prospective operation by its own terms, since a statute which fixes a future day as to its effective date stamps its prospective character on its face. *Commonwealth v. Griffin,* 189 Pa. Super. 59, 149 A.2d 656 (1959), cert. denied, 365 U.S. 838.

Plaintiff advances the argument that application of section 8371 to the present case does not require retroactivity. According to this theory, insurers always owed to their insureds the duty to exercise reasonable care when investigating claims, even before passage of section 8371. Insurers also owed further duties to refrain from the acts prohibited by the UIPA, which effectively created a "duty to act in good faith." While insureds possessed a right without a remedy under *D'Ambrosio,* the legislature responded by passing section 8371 and gave injured insureds a remedy for bad-faith practices — punitive damages. In plaintiff's words:

"[A]t the time this contract was entered, the defendant's obligation to the insured was to act in 'good faith.' That obligation did not change on July

1, 1990. What did change was the plaintiff's legal *remedy* in the event that the insurer does not fulfill its obligation." Plaintiff's brief in opposition to defendant's preliminary objections, p. 12. (emphasis supplied)

While plaintiff's argument may appear attractive at first blush, we believe it is fallacious for several reasons.

First, plaintiff's own cases indicate that there has always been a remedy for breach of an insurer's duty to exercise reasonable care when investigating claims — compensatory damages in an action in assumpsit. *Diamon v. Penn Mutual Fire Insurance Co.,* 247 Pa. Super. 534, 372 A.2d 1218 (1977).

Second, the *D'Ambrosio* court determined long ago that the UIPA does not afford insureds a private cause of action, so that statute could hardly be said to create private contractual duties as between insurers and their insureds. Rather, the UIPA is merely a regulatory framework that prohibits unfair practices harmful to consumers in the insurance industry. It confers no rights upon private parties, and the only remedies provided by the act are those administrative remedies which the Insurance Commissioner is authorized to pursue. *Nazur v. Safeguard Mutual Assurance Co.,* 293 Pa. Super. 385, 439 A.2d 165 (1981); *Stack v. Nationwide Mutual Fire Ins. Co.,* 7 D.&C. 3d 113 (1978); 40 P.S. §§1171.7-1171.11.

Third, this is not a case of possessing a right without a remedy, as plaintiff would have us believe. Section 8371 did not merely afford insureds with a remedy. On the contrary, this law was passed to create legislatively a new cause of action which the courts in the past had declined to recognize. *D'Ambrosio, supra.* Plaintiff's argument must therefore fail, since the legislature does not possess the

authority "to give retrospectively a right of action where none existed at the time of the occurrence out of which the alleged cause of action arose." *Borough of Huntingdon v. Dorris,* 78 Pa. Super. 469, 476 (1922). A cause of action accrues at that time when plaintiff could have first maintained her action to a successful result. *Kapil v. Assn. of Pennsylvania State Colleges and University Facilities,* 504 Pa. 92, 470 A.2d 482 (1983); *Halpern v. Gerber,* 42 D.&C. 3d 59 (1986). Plaintiff's statutory cause of action under section 8371 in the present case thus would have accrued, if at all, upon the first instance that could be construed as bad faith. By plaintiff's own admission, such time was well before the effective date of section 8371: "There should be no excuse for Nationwide not paying work-loss benefits for the period from August 16, 1989, until the present." Plaintiff's complaint, exhibit F (letter mailed by plaintiff's counsel to defendant *dated April 25, 1990*). Also, all of the negotiations between plaintiff and defendant transpired well before the effective date. And before that date, no such cause of action existed for punitive damages for mere contractual breach.

Fourth, applying section 8371 to the facts here on the basis of plaintiff's argument would have the effect of recasting the statute as remedial legislation. A remedial statute falls within a special class of legislation also known as curative or validating, which operates retroactively by definition to cure an omission that the legislature might have dispensed with by a prior statute. *Borough of Weatherly v. Warner,* 148 Pa. Super. 557, 25 A.2d 831 (1942). By way of example, a statute was held to be remedial and thus apply retroactively where it validated any county tax lien not revived every five years, as long as the county took certain prescribed steps within

six months after the statute's final enactment. *In re Malick,* 137 Pa. Super. 139, 8 A.2d 494 (1939). In the words of that court:

"The improvement of the property is assumed and the equitable right to contribution from the property survives although *by reason of some mistake in the proceedings the remedy for its collection is lost.* The legislature may provide a new remedy and in so doing there is no deprivation of a constitutional right." *In re Malick,* quoting *Borough of Huntingdon v. Dorris,* 78 Pa. Super. at 474-5. (emphasis supplied) In the case at bar, section 8371 cannot be considered remedial, since it was not passed with the purpose to remedy some prior omission that might have been dispensed with by prior statute. There was no prior statute on point.

Fifth, in support of her argument, plaintiff cites the principle that *"retrospective laws* which have been deemed reasonable are those which impair no contract and disturb no vested right, *but only vary remedies,* cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted." Plaintiff's brief at 11 (emphasis supplied), citing as authority *Krenzelak v. Krenzelak, supra,* and *Smith v. Fenner, supra.* We believe this principle is cited out of context because it has no relevance to a prospective statute, which we have already termed section 8371 to be. In our view, plaintiff cannot cite this principle while simultaneously arguing that application of section 8371 to this case does not require retroactive operation.

Sixth, even were we to construe the subject statute as remedial, retroactive statutes are deemed reasonable only if, among other things, they disturb no vested right. But application of section 8371 to the case at bar *would* disturb a vested right of the

defendant-insurer. Prior to the passage of this statute, insurers possessed an absolute defense to any claim for punitive damages for unreasonable refusal to pay insurance claims (absent tortious conduct on the part of the insurer such as fraud). And as the Superior Court recognized in *Borough of Huntingdon v. Dorris, supra:*

"A vested right is property, as tangible things are, when they spring from a contract or principles of the common law, and there may be a vested right in an accrued cause of action *or in a defense to a cause of action.*" 78 Pa. Super. at 475-6. (emphasis supplied) We cannot in good conscience permit interference with such a right.

We now reach the second issue in this case, whether a cause of action for defendant-insurer's alleged bad faith nevertheless accrued after the effective date of section 8371 so as to make retroactive application unnecessary. Plaintiff analogizes this case to two appellate decisions, *Commonwealth, Dept. of Labor and Industry v. Pennsylvania Engineering Corp.,* 54 Pa. Commw. 376, 421 A.2d 521 (1980), and *Creighan v. Pittsburgh,* 389 Pa. 569, 132 A.2d 867 (1957), to argue that retroactivity here is not required. While it is true that a statute is not made retroactive merely because it draws upon antecedent facts for its operation, *Creighan v. Pittsburgh, supra,* its effect will nonetheless be given only to those transactions or events occurring after its effective date.

In *Pennsylvania Engineering Corp.,* the Commonwealth Court permitted application of section 704 of the Unemployment Law[2] to enable the Bu-

---

2. Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, added by section 8 of the Act of July 6, 1977, P.L. 41, 43 P.S. §864, effective January 1, 1978.

reau of Employment Security to recover funds from defendant-employer equal to the deductions the latter had made from certain back-wage awards to former employees. The statute provides a mechanism for the bureau to recoup unemployment compensation benefits paid to claimants who become ineligible for such benefits because of the claimant's receipt of back-wage awards. Although the unemployment benefits accrued and the back wages were awarded prior to the effective date of section 704 (a decidedly prospective statute), these facts alone did not make application of the statute retroactive. In making this determination, the court looked only to those transactions or events that triggered legal liability. The transaction triggering liability under section 704 lay in the employer's act of making the deduction from the back-wage award. *Pennsylvania Engineering Corp.* at 380, 421 A.2d at 524. Thus, the court permitted recoupment by the bureau for those deductions made after the effective date of the statute, and denied recoupment where the deductions were made before that date.

In the case at bar, the transactions or events that could conceivably trigger legal liability under 42 Pa.C.S. §8371 are alleged in paragraphs 21(a)-(h) in plaintiff's complaint. However, the primary triggering event here, defendant-insurer's asserted refusal to pay plaintiff's claim for income loss benefits, occurred months before the effective date of section 8371. Further, we can find no transaction or event with regard to defendant's conduct after the effective date which would trigger liability under the subject statute.

With respect to the *Creighan* decision, the Pennsylvania Supreme Court permitted appellee-fireman to recover disability benefits under the Heart and

Lung Act[3] for tuberculosis he contracted before the effective date of the act. The retroactivity issue was avoided by characterizing the tuberculosis as an on-going condition which continued to exist on the statute's effective date and thereafter. The court rejected defendant's attempt to term the *discovery* of the disease as the event triggering application of the statute:

"Particularly unfair and unsound is this distinction in view of the extreme difficulty, if not actual impossibility, of pinpointing with any degree of accuracy the actual time of the onset of tuberculosis. If all the stated requirements are met, the time of discovery of the onset of the disease should not control liability for compensation." *Creighan, supra.* We are hesitant to extend this rationale to matters beyond medical conditions.

In the case at bar, the time when an insurer refuses to pay benefits is readily ascertainable since it is a specific act or omission. Bad faith must be found in the specific acts or omissions made by the insurance company. It is not a state of being in which insureds suddenly find themselves. After July 1, 1990, the insurer's file had already been referred to its attorneys to prepare a defense in the instant lawsuit. This state of affairs alone cannot, as a matter of law, constitute a bad-faith insurance practice.[4]

---

3. Act of June 28, 1935, P.L. 477, as amended, 53 P.S. §327.

4. Upon its own motion and outside of any case or controversy, the Pennsylvania Supreme Court stayed operation of 42 Pa.C.S. §8355, which was another provision in the recently enacted Act 6. See Pennsylvania Bulletin, Vol. 20, no. 36, September 8, 1990, p. 4703. Such action was taken pursuant to the court's rule-making authority appearing in the Constitution of 1968, Article V, section 10(c), as codified by 42 Pa.C.S. §1722. Interestingly enough, section 8355 attempted,

In summary, we find no act or omission made by defendant-insurer constituting bad faith after the effective date of section 8371. Any such alleged bad-faith practices occurring before that date are irrelevant and beyond the prospective reach of the statute. To hold otherwise would, in effect, be equivalent to rewriting the statute to give it an entirely new effective date — an undertaking beyond the authority of this court. Whereas any purported cause of action for punitive damages for mere contractual breach accruing before the subject statute's effective date is defeated by the *D'Ambrosio* decision, plaintiff's claim for punitive damages in the present case must fail. We are satisfied that the law says with certainty that no recovery is possible on the claim for punitive damages. As the complaint shows on its face that the punitive damage claim is devoid of merit, defendant's preliminary objections in the nature of a demurrer are sustained. *Cianfrani v. Commonwealth, State Employees' Retirement Board,* 505 Pa. 294, 479 A.2d 468 (1984); *Greenberg v. Aetna Insurance Co.,* 427 Pa. 511, 235 A.2d 576 (1967), cert. denied, *Scarselletti v. Aetna Casualty & Surety Co.,* 392 U.S. 907, 88 S.Ct. 2063, 20 L.Ed.2d 1366 (1967), rehearing denied, 393 U.S. 899.

---

among other things, to provide a sanction punishing an attorney's bad-faith filing of pleadings, motions and other papers in litigation. The remedy for such bad-faith conduct consisted in an award to the successful party of the costs, attorney's fees and a civil penalty not to exceed $10,000. Through its staying of section 8355 pursuant to its uniquely held constitutional power, the Pennsylvania Supreme Court has taken back the regulation of such matters from the General Assembly, thereby designating itself as the sole arbiter of attorney conduct. Therefore, the terms of section 8371 as a companion provision to section 8355 in Act 6 may not be extended to the conduct of attorneys. Otherwise, our Supreme Court would have stayed its operation as well.

## ORDER

And now, January 11, 1991, upon consideration of defendant's preliminary objections, the briefs of counsel and oral argument thereon, it is hereby ordered, directed and decreed that defendant's preliminary objections in the nature of a demurrer are granted, and the claim for punitive damages is stricken from the complaint.